Diana **BROUSSARD, Individually and as Administratrix of the Estate of Roy A. Broussard, Deceased, Plaintiff-Appellant,**

v.

**SOUTHERN PACIFIC TRANSPORTATION COMPANY, Defendant-Appellee.**

No. 78–3734.

United States Court of Appeals, Fifth Circuit.

Sept. 18, 1980.

Rehearing and Rehearing En Banc Denied Oct. 16, 1980.

Footnote 11—Continued

| SCHOOL YEAR | WHITE NUMBER | PERCENTAGE | BLACK NUMBER | PERCENTAGE | AMERICAN INDIAN NUMBER | PERCENTAGE |
|---|---|---|---|---|---|---|
| 1972–73 | 1 | 50.0 | 1 | 50.0 | 0 | 0.0 |
| 1973–74 | 3 | 75.0 | 1 | 25.0 | 0 | 0.0 |
| 1974–75 | 1 | 100.0 | 0 | 0.0 | 0 | 0.0 |
| Average | 2.6 | 61.9 | 1.4 | 33.3 | 0.2 | 4.8 |

Racial Composition of Title I Teachers' Aides

| SCHOOL YEAR | WHITE NUMBER | PERCENTAGE | BLACK NUMBER | PERCENTAGE | AMERICAN INDIAN NUMBER | PERCENTAGE |
|---|---|---|---|---|---|---|
| 1970–71 | 6 | 60.0 | 3 | 30.0 | 1 | 10.0 |
| 1971–72 | 6 | 54.5 | 4 | 36.4 | 1 | 9.1 |
| 1972–73 | 7 | 63.6 | 3 | 27.2 | 1 | 9.1 |
| 1973–74 | 9 | 81.8 | 1 | 9.1 | 1 | 9.1 |
| 1974–75 | 8 | 80.0 | 1 | 10.0 | 1 | 10.0 |
| 1975–76 | 8 | 80.0 | 1 | 10.0 | 1 | 10.0 |
| Average | 7.3 | 69.8 | 2.2 | 20.6 | 1 | 9.5 |

Franklin D. Houser, Stephen F. Lazor, San Antonio, Tex., for plaintiff-appellant.

Matthews, Nowlin, MacFarlane & Barrett, Ferd. C. Meyer, Jr., Howard P. Newton, San Antonio, Tex., for defendant-appellee.

Before BROWN, HENDERSON and SAM D. JOHNSON, Circuit Judges.

SAM D. JOHNSON, Circuit Judge:

On August 5, 1976, a Southern Pacific Transportation Company train derailed while on the Roosevelt Avenue Overpass in San Antonio, Texas. One of the boxcars tumbled off the overpass and onto an automobile, killing the driver, Roy Broussard. Broussard's wife subsequently filed his wrongful death action against Southern Pacific for actual and exemplary damages. After extensive discovery the district court granted defendant's motion for partial summary judgment on plaintiff's allegation of gross negligence. In this interlocutory appeal from that order, we reverse.

*Facts*

A Southern Pacific train composed of 132 cars left West Coulton, California on August 2, 1976 bound for Corsicana, Texas. Southern Pacific planned to pass the train on to the St. Louis, Southwestern Railway Company at the Corsicana interchange. In San Antonio, before reaching Corsicana, the train experienced a malfunction of the air brake system. The malfunction occurred when there was a sudden unintended application of the emergency air brakes. This unintended application of the emergency brakes caused the train to derail on the Roosevelt Avenue Overpass. One of the train's boxcars fell from the overpass onto Roy Broussard's automobile.

Broussard's widow filed this Texas wrongful death action against Southern Pacific in federal court.[1] Plaintiff contended that the train derailed due to a malfunction of the air brake system and due to improper load distribution within the train. Plaintiff prayed for both actual and exemplary damages. She based her claim for exemplary damages on two grounds. First, she contended that when defendant intended to pass trains or railroad cars on to another railroad line, defendant did not bother to correct any brake malfunctions. Plaintiff alleged Southern Pacific adhered to this practice so that the railroad could avoid the delay and expense involved in rectifying brake problems. Second, plaintiff contended that defendant's employees arranged cars in a train without any regard for load distribution. She alleged that Southern Pacific ordered its employees to arrange cars as quickly as possible in order to minimize costs and save time.

Plaintiff filed the suit in December 1976. Over the next 18 months the parties conducted exhaustive discovery. By the end of May 1978 the parties had deposed over 30 individuals, in addition to filing and answering numerous interrogatories, requests for admissions, and requests for production of documents. During this discovery period defendant filed a motion for partial summa-

ry judgment on the issue of gross negligence. The district court held a hearing on this motion in August 1978. After examining the summary judgment evidence offered by the parties, the court concluded there was no genuine issue of material fact and that the defendant was entitled to judgment on the issue of gross negligence as a matter of law. The trial judge, however, recognized that the grant of partial summary judgment involved a controlling question of law about which there was substantial ground for difference of opinion. The district judge felt that an immediate appeal would materially advance the ultimate termination of the litigation, and he certified the issue as one appropriate for interlocutory appeal.[2] 28 U.S.C. § 1292(b). This Court then granted plaintiff leave to appeal from the district court's interlocutory order.

*Gross Negligence*

Under Texas law, in order to obtain exemplary damages, a plaintiff must establish that the defendant was guilty of gross negligence. Gross negligence is "that entire want of care which would raise the belief that the act or omission complained of was the result of a conscious indifference to the right or welfare of the person or persons to be affected by it." *Missouri Pacific Railway Company v. Shuford,* 72 Tex. 165, 10 S.W. 408, 411 (1888). The parties initially quarrel about exactly what must be shown to establish gross negligence. Defendant argues that, by using the phrase "entire want of care," the Texas courts have indicated that a plaintiff must show that a defendant has not exercised *any care* in order to establish gross negligence. Consequently, defendant contends that a showing of *slight care* conclusively establishes the unavailability of gross negligence. *See, e. g., Ballenger v. Mobil Oil Corporation,* 488 F.2d 707 (5th Cir.), *cert. denied,* 416 U.S. 986, 94 S.Ct. 2390, 40 L.Ed.2d 763 (1974); *Hernandez v. Smith,* 552 F.2d 142 (5th Cir. 1977). Plaintiff con-

---

1. The trial court had jurisdiction under 28 U.S.C. § 1332(a).

2. The trial judge stayed all other proceedings during the pendency of this appeal.

tends that gross negligence is established by a showing that defendant exercised such a slight degree of care that its conduct indicates a conscious indifference to the rights and welfare of others. A showing of slight care by a defendant is not always sufficient to defeat a claim of gross negligence. Thus, in order to obtain summary judgment, a defendant must show the exercise of a degree of care that proves it is not consciously indifferent to the rights and welfare of the public in general. A careful examination of the most recent Texas Supreme Court case dealing with this issue, *Atlas Chemical Industries, Inc. v. Anderson*, 524 S.W.2d 681 (Tex.1975), supports plaintiff's position.

The plaintiff in *Atlas Chemical* sued to recover for the damage to his land as a result of the discharge of industrial waste. At trial the jury awarded exemplary damages based upon a finding that the chemical company acted in disregard of the known rights of another when it discharged its industrial waste into the creek waters. Initially, the Texas Supreme Court reversed the grant of exemplary damages, holding that the evidence did not support the jury findings. The court focused on the chemical company's pollution control system. The system had reduced the amount of suspended solids in the industrial waste from 8,410 parts per million to 449 parts per million. This action was deemed sufficient to preclude a finding of gross negligence. In short, the court adopted the position that the exercise of some care is always suffi-cient to defeat a claim for exemplary damages.

On rehearing the Texas Supreme Court reversed itself. The court upheld the award of exemplary damages because the evidence showed that the chemical company had done nothing of *any significance* to combat the pollution problem. The Supreme Court concluded that while a defendant's acts need not be completely effective to preclude exemplary damages, the acts must demonstrate some concern for the rights of others.

> Conceivably the pollution of Potter's Creek could have continued despite efforts to correct it which, though not meeting the standard of reasonableness, would have demonstrated that Atlas acted with at least some concern for the consequences to downstream property owners.

*Id.* at 689. The Atlas Chemical Company simply had not done enough to enable the court to reverse the jury award. The holding in *Atlas Chemical* establishes that evidence of slight care will not always be enough to bar exemplary damages. Instead, in determining whether a defendant is liable for gross negligence, the question is whether, in light of all the surrounding circumstances, the defendant failed to exercise care, or exercised so slight a degree of care, that one can say the defendant was consciously indifferent to the interests of others.[3] *International & G.N.R. Co. v.*

---

**3.** It is undisputed that Texas law is to be applied in the case at bar. The *Erie* doctrine requires federal courts, when applying state law, to apply, where possible, the law as "declared by its [the State's] legislature in a statute or by its highest court." *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938). Today this Court adheres to the law as set forth in the most recent Texas Supreme Court case on gross negligence, *Atlas Chemical*, and holds that evidence of slight care will not always be enough to bar exemplary damages.

Two recent Fifth Circuit cases—*Hernandez v. Smith*, 552 F.2d 142 (5th Cir. 1977) and *Maxey v. Freightliner*, 623 F.2d 395 (5th Cir. 1980)—might be read to interpret Texas law differently. Read alone, both *Hernandez* and *Maxey* indicate that the exercise of some care by a defendant bars a finding of gross negligence in Texas. *Neither Hernandez nor Maxey, however, considered Atlas Chemical in reaching this conclusion. Hernandez* relied exclusively on *Ballenger v. Mobil Oil Corp.*, 488 F.2d 707 (5th Cir.), *cert. denied*, 416 U.S. 986, 94 S.Ct. 2390, 40 L.Ed.2d 763 (1974), a pre-*Atlas Chemical* case. *Maxey* relied on *Hernandez* and Texas cases of a pre-*Atlas Chemical* vintage. Of critical importance, therefore, is the fact neither of these two cases, *Hernandez* nor *Maxey*, analyzed *Atlas Chemical*, the most recent Texas Supreme Court case on gross negligence.

Today's holding, in a literal sense, creates a conflict in this Circuit. This is the type of conflict, however, that the *Erie* doctrine envisions and indeed demands. As state law

*Cocke,* 64 Tex. 151 (1885); *Hood v. Phillips,* 554 S.W.2d 160 (Tex.1977). *See Knabe v. National Supply Division of Armco Steel,* 592 F.2d 841 (5th Cir. 1979) (interpreting *Atlas* as holding that evidence of "some efforts" by a defendant is insufficient to preclude a finding of gross negligence when the efforts "were neither thoroughgoing nor effective").

*The Propriety of Summary Judgment*

In the case at bar the issue is whether the district court properly granted summary judgment for the railroad. In order to affirm we must find that the defendant exercised a degree of care that as a matter of law establishes it was not consciously indifferent to the rights of others. Demonstrations by defendant of isolated indications of care will not be enough to make this showing. Instead, Southern Pacific must show, in light of all the surrounding circumstances, that it exhibited a sufficient degree of concern.

■ Summary judgment is proper only where there is no genuine dispute concerning any material fact. F.R.C.P. 56. In ruling on summary judgment motions, courts are required to view the facts and draw all permissible inferences in a light most favorable to the party opposing the motion. *United States v. Diebold, Inc.,* 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). The issue in the case at bar is thus whether, giving plaintiff the benefit of all factual assumptions and inferences that may be drawn, the defendant is nonetheless entitled to judgment on the question of gross negligence as a matter of law. *See, Adickes v. S. H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

A malfunction in the train's air brakes is one of the alleged causes of the derailment. The air brake system on a train operates by means of compressed air which flows from a reservoir in each unit of the train to the brake cylinder on each car. The train's engineer controls the degree of braking force applied by regulating the amount of air pressure that is applied to the brake cylinders. The engineer may make an emergency application of the brakes by activating the air pressure in the system. The brake system is designed to be failsafe. A malfunction in the system will not cause a loss of braking power, but rather an emergency application of the brakes. In railroad parlance, this undesired emergency application of the air brakes is termed a "UDE." Plaintiff offered undisputed evidence establishing that the train derailed as the result of a UDE.

Plaintiff also offered the deposition testimony of several Southern Pacific employees from which the jury could easily infer that the emergency application of a train's air brakes are dangerous and pose a threat of derailment. After establishing the danger of derailment presented by an application of the emergency brakes, plaintiff provided evidence showing that the train in question experienced several UDE's prior to the fatal occurrence in San Antonio. Finally, plaintiff offered deposition testimony indicating that when a train or individual cars are destined for another railroad line, the defendant ignores UDE problems and tries to get the cars to interchange points as quickly as possible, where they can be turned over to another railroad. This policy was allegedly adopted in order to save time and money. In summary, plaintiff submitted summary judgment evidence establishing: that UDE's are dangerous; that this train experienced a series of UDE's before San Antonio; that defendant had a policy of not inspecting and repairing railroad cars with UDE problems when the cars were destined to be passed on to other railway lines; and that a UDE caused the train to derail in San Antonio. While the defendant disputes these assertions, for the purposes of summary judgment, we assume them all to be true.

Defendant offered a substantial amount of evidence to establish that it voluntarily made efforts to control and solve the UDE problem. First, defendant initiated a de-

changes, the federal courts must apply the new law, regardless of prior decisions. In *Atlas Chemical* the Texas Supreme Court clarified the law of gross negligence. Today we do no more than follow the Supreme Court's dictates in *Erie* and its progeny, and apply the most recent Texas jurisprudence. Texas law has changed and so do we.

tailed inspection procedure. All cars are tested for air brake problems at the terminal where the train is made up and at terminals along the route approximately every 500 miles. Additionally, train crews are required to inspect all cars after a train experiences a UDE. Second, Southern Pacific designed a computer program to isolate cars with faulty air brakes. The railroad enters into the computer the car number of all cars that compose a train and also the car number of all cars in trains that have had UDE problems. When a train experiences a UDE, the computer scans the list of trains that have recently had brake difficulties. Any railroad car that was previously a part of a train that experienced a UDE is identified as a repeater. These cars are taken to a terminal where the air brakes are thoroughly tested and any needed repairs made. Plaintiff, however, contends that defendant does not follow this elaborate procedure and introduced enough summary judgment evidence to create a genuine factual issue.

Plaintiff offered a substantial amount of summary judgment evidence challenging defendant's claim that it performed the various inspections. Plaintiff first points to the testimony of Federal Railroad Inspector Carl Luker. Luker examined 33 of the train's approximately 130 cars after the derailment. His inspection revealed safety defects in the brakes of seven of the train's cars. Plaintiff argues that if the railroad was truly inspecting its cars, these defects would have been detected long before the derailment.

Plaintiff also points to the inspection of the train that defendant claims was made in Del Rio, Texas the morning of the derailment. She contends that the physical facts indicate that the inspection could not have been made. The Chief Dispatcher testified that the train was in Del Rio for only eight minutes at 3:40 a. m. The train itself was approximately 7,600 feet long. Plaintiff argues that it is physically impossible to inspect a one and a half mile long train in eight minutes at 4:00 in the morning. This contention is supported by the testimony of various Southern Pacific employees, who stated that a careful inspection at that time would probably take between 25 and 75 minutes.

Finally, plaintiff contends defendant's conduct in San Antonio after the derailment illustrates the illusory nature of defendant's inspection program. Despite the fact that the train had just derailed as the result of a UDE, the railroad only examined the train in the San Antonio yard for 40 minutes. Even Southern Pacific employees admitted that an inspection at that time should have taken a minimum of a couple of hours. Based on these facts, a jury could conclude that Southern Pacific's inspection program was nothing more than a facade.

Plaintiff also challenges defendant's claim that it used the special computer program on all trains. She contends that when Southern Pacific planned to pass a train on to another railway line, it did not bother to run the computer program or follow the rules set up to ensure the success of the project. In supporting this contention, plaintiff points first to defendant's rules requiring train crews and dispatchers to report every UDE to the computer center, and computer center employees to note every UDE reported to them in the Operations Control Log. Defendant concedes that the train experienced four UDE's prior to the derailment in San Antonio. The Log, however, does not contain one reference to a UDE. The only entry about the train in the Log is the derailment itself.

Second, plaintiff contends that defendant's destruction of certain computer records establishes that the railroad did not run every car of a train through its computer to determine the existence of prior UDE problems. The derailment occurred on August 5, 1976. Plaintiff filed suit and served process in December 1976. Two weeks after the service of process, defendant erased the computer records on UDE's for the time period prior to August 31, 1976. Southern Pacific destroyed the information concerning the train less than five months after it entered the data into the computer. Defendant's computer expert testified that the information was normally kept in the computer for approximately one year. Plaintiff contends that this premature destruction of computer tapes raises at least a

presumption that the evidence would have been unfavorable to the defendant.

Defendant offered evidence indicating that it exercised care with respect to the train's brake system. Notwithstanding the derailment of August 5th, the program defendant developed for solving the UDE problem, if actually followed, well might constitute the exercise of that degree of care that makes summary judgment for defendant on gross negligence proper. Plaintiff, however, provided evidence creating a genuine issue of material fact about whether these programs were anything more than plans on paper. Unexecuted projects are not sufficient to preclude exemplary damages. Since we must view the facts in a light most favorable to plaintiff, summary judgment was improper on the issue of defendant's gross negligence in caring for the brakes.

The second alleged cause of the derailment is the train's load distribution. Load distribution is a railroad term for the arrangement of heavy and light cars throughout a train. Load distribution is important because the placement of the heavy cars at the rear of a train presents a hazard of derailment if emergency brakes are applied. When the emergency brakes are applied the heavy cars run into the lighter cars that are in front and can knock the lighter cars from the track.

Plaintiff offered testimony stating that the activation of the emergency brakes in San Antonio caused heavier cars located at the end of the train to crash into lighter cars and knocked one of the empty boxcars off the overpass and onto Roy Broussard's automobile. She also provided summary judgment evidence indicating that the railroad ordered its employees to arrange the cars in a train as expeditiously as possible without any regard whatsoever for load distribution. Once again, defendant contests plaintiff's allegations. For the purposes of summary judgment, however, this Court must view the evidence in a light most favorable to plaintiff. In doing so, we conclude that there is a genuine issue of material fact about whether defendant was grossly negligent in its distribution of the cars in the train.

*Conclusion*

In Texas a showing by a defendant of "slight care" does not preclude an award of exemplary damages. Only where the undisputed facts establish that defendant exercised a degree of care indicating it was not consciously indifferent to the rights of others is summary judgment on gross negligence appropriate. In the case at bar, the summary judgment evidence creates a question of fact about whether defendant exercised the necessary degree of care. Plaintiff's evidence, if believed, would support an award of exemplary damages. Accordingly, the district court's grant of summary judgment is

REVERSED AND REMANDED.