BURK ROYALTY COMPANY et al., Petitioners,

v.

Sally K. WALLS, Individually and a/n/f and Natural Guardian of Jeffery Paul Walls, Jr., Respondent.

No. B–9439.

Supreme Court of Texas.

May 27, 1981.

Rehearing Denied June 30, 1981.

Groce, Locke & Hebdon, Thomas H. Crofts, Jr., San Antonio, Stan Carter, Wichita Falls, for petitioners.

J. Michael Smith, Gilmer, Clifton L. Holmes, Kilgore, for respondent.

SPEARS, Justice.

This suit for exemplary damages was brought by respondent Sally Walls, individually and as next friend and guardian of Jeffery Paul Walls, Jr., her minor son, against the employer of her deceased husband, Jeffery Paul Walls. Mrs. Walls alleged that both the employer, Burk Royalty Company, through its district superintendent, Kenneth Swetnam, and Swetnam, individually, were grossly negligent. Having already received workers' compensation benefits, this suit for exemplary damages was brought by Mrs. Walls pursuant to article XVI § 26 of the Texas Constitution and a statute, article 8306, § 5.[1] Judgment

---

1. All statutory references are to Texas Revised Civil Statutes Annotated.

was rendered for the Walls based on the jury's verdict. The court of civil appeals reformed the amount of the judgment but remanded the cause to the trial court to allocate the award between Mrs. Walls and her son. 596 S.W.2d 932. We affirm the judgment of the court of civil appeals.

The principal question presented is whether there is some evidence to support the jury's finding that Kenneth Swetnam was grossly negligent on the occasion in question. Since Burk Royalty concedes that Swetnam was a vice-principal, if the jury finding is supported by some evidence, Burk Royalty is also liable for exemplary damages. Underlying issues concern the definition of gross negligence and the standard of review of gross negligence jury findings. A third point concerns broad submission of negligence issues.

The deceased, Jeff Walls, was an employee of Burk Royalty on November 8, 1974, when he was burned to death at an oil well site in Rusk County. The fatal fire occurred while he was working as a member of a four-man crew pulling wet tubing from an oil well so that the pump at the bottom could be replaced and production restored. Walls was working on the tubing board or derrick board about twenty-five feet up in the derrick above the floor of the well. Before work had begun that day, Billy Lay, Burk's operator in charge of the well, had intended to get in his truck and look for Boyd Ehl, the toolpusher in charge of the crew, to find out how they should remove the fluid that would be trapped in the tubing (wet tubing) held in by the standing valve at the bottom of the tubing. In the meantime, Swetnam drove up to deliver the crew's paychecks, and Lay asked him instead.

Swetnam was Burk Royalty's District Superintendent in charge of all the company's operations in the East Texas area including safety for that district. Lay suggested that an explosive charge be dropped in the well to blow a hole in the tubing and let the fluid drain out at the bottom, a process called "shooting the tube." However, Swetnam told Lay not to use that method, but rather to pull the tubing until they reached fluid, then "swab" the remainder of

the tubing in the hole into the "cellar" from which it was to be hauled off by truck. During the conversation, Swetnam said nothing about safety. He remained in his car and did not check for fire extinguishers or any other safety equipment.

After Swetnam left, the crew began pulling tubing. Walls' job up on the tubing board was to take the 30-foot sections ("joints") of pipe as they were pulled up and place them in a rack. He had a safety belt strapped around his shoulders and waist and attached to the derrick to prevent his falling. David Barnes and Stephen Van Meter, two other crew members, were working on the floor directly below the tubing board. Billy Lay was working from the "goat stand" on the rig where he operated the winch (drum) and cable that pulled the tubing up.

The tubing closest to the surface contained no fluid. Shortly before noon after pulling approximately twenty dry joints, the crew reached wet tubing, i. e., full of fluid. Before the next joint could be pulled, some pressurized gas escaped, causing oil to spew out of the tubing up into the derrick, covering Walls' body with oil. Somehow the gas ignited and shot flames like a torch to the top of the derrick, igniting the oil on Walls' body. The fire lasted for about a minute. Walls struggled to get out of his safety belt but couldn't. One witness described Walls "kind of jumping around . . . he jumped over to the side, you know, and his clothes and stuff was falling off him. It burned all of his clothes off and he was kicking around a bit." Some of the crew tried unsuccessfully to extinguish the fire on Walls by throwing buckets of water at him. There were no fire extinguishers on the rig. After the fire, Walls' body hung in mid-air, suspended by his safety belt, until taken down two hours later.

Special issue No. 1 submitted to the jury asked: "Do you find from a preponderance of the evidence that on the occasion in question Kenneth Swetnam failed to follow approved safety practices for pulling wet tubing?" The jury answered "Yes." The

jury next found that such failure was negligence and a proximate cause of the occurrence in question. After finding substantial actual damages for the widow and son, the jury found in special issue No. 8 that on the occasion in question, "the failure of Kenneth Swetnam" was gross negligence. In the instruction accompanying this issue the jury was instructed:

> You are instructed in connection with the foregoing Special Issue that "gross negligence" is the exercise of so little care as to justify the belief that such action was a heedless and reckless disregard to the safety of Jeffrey Paul Walls and others.
>
> "Heedless and reckless disregard" means more than momentary thoughtlessness, inadvertence, or error of judgment. It means such an entire want of care as to indicate that the act or omission in question was the result of conscious indifference to the rights, welfare, or safety of the persons affected by it.

This instruction is not attacked here by the defendants although the court's general submission of the negligence issue is attacked. In special issue No. 9, the jury found exemplary damages of $150,000, which the court of civil appeals reformed to $100,000 to conform to plaintiffs' pleading.

The court of civil appeals held that there was some evidence to support the jury's finding of gross negligence. The court further held that there was some evidence that defendant's negligence was a proximate cause of Walls' death in that Swetnam failed "to have available at prescribed positions the two (2) fire extinguishers prescribed by paragraph No. 14 of the company safety rules."[2]

Burk Royalty and Swetnam here contend that there is no evidence of such an entire want of care on the part of Swetnam as would amount to conscious indifference and support an award of exemplary damages. They argue that although Swetnam was in charge of safety, it was not his responsibility to actually perform the task of positioning the fire extinguishers. Further, they say, there is no evidence that Swetnam knew or should have known that there were no fire extinguishers properly positioned at the well. They cite a number of cases which hold that if there is "some care" exercised, there necessarily cannot be "an entire want of care," and thus, exemplary damages are improper. *Sheffield Division, Armco Steel Corp. v. Jones*, 376 S.W.2d 825 (Tex.1964); *Bennett v. Howard*, 141 Tex. 101, 170 S.W.2d 709 (1943); *Loyd Electric Co. v. DeHoyos*, 409 S.W.2d 893 (Tex.Civ. App.—San Antonio 1966, writ ref'd); *Delgadillo v. Tex-Con Utility Construction, Inc.*, 526 S.W.2d 208 (Tex.Civ.App.—Dallas 1975, writ ref'd n. r. e.). They contend that since there is evidence in the record that Swetnam exercised "some care" there is no evidence of an entire want of care, justifying an award of exemplary damages.

The traditional standard to be applied by an appellate court in testing a "no evidence" point is for the court to consider only the evidence, when viewed in its most favorable light, that tends to support the jury's finding of gross negligence and to disregard all evidence leading to a contrary conclusion. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951); *see* Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 Tex.Law Rev. 361 (1960).

To determine whether there is some evidence to support the jury's finding of gross negligence, we will first examine the definition of gross negligence. Second, we must discuss our standard of review in gross negligence cases. The development of the concept of gross negligence in Texas has been somewhat confusing. Various definitions have been approved by the courts depending on the type of case involved. A discussion of the concept's historical development and the gross negligence definitions used by

---

2. Burk Royalty Company safety policies provided:

 14. All production rigs will be equipped with two (2) twenty-pound dry chemical extinguishers, or equivalent, in good working order. While operating, these extinguishers will be placed in opposite directions within ten feet of the well head.

the courts will be helpful in arriving at the correct definition of gross negligence and its application in this workers' compensation case.

## HISTORY OF GROSS NEGLIGENCE

### 1. *Texas Railroad Statute Period.*

Under the common law, a cause of action for personal injuries resulting in death terminated upon either the death of the victim, or the wrongdoer. 22 Am.Jur.2d *Death* § 1 (1965); 17 Tex.Jur.2d *Death by Wrongful Act* § 2 (1960). Because the rule created such a great hardship, legislation modifying, and even abrogating, the rule began to appear around the middle of the 19th Century. 22 Am.Jur.2d *Death* § 2 (1965). The first such statute was Lord Campbell's Act, passed in England in 1847. *See* Annot., *Death Act—Damages—Sentimental Loss*, 74 A.L.R. 11, 13–23 (1931). Texas enacted its own version of Lord Campbell's Act in 1860, allowing a suit for the recovery of actual damages to survive a decedent "by reason of the negligence or carelessness of the proprietor, or proprietors, owner, charterer or hirer of any railroad, steamboat, stage-coach, or other vehicle for the conveyance of goods or passengers, or by the unfitness, gross negligence or carelessness of their servants or agents . . . ." Acts 1860, 8th Leg. ch. 35, p. 32. Exemplary damages were not recoverable under the act. *Houston & T. C. Ry. v. Baker,* 57 Tex. 419, 423–424 (1882). *See also Houston & T. C. Ry. v. Bradley,* 45 Tex. 171 (1876); II Sayles' Tex.Civ.Stat. art. 2899–2909, at 26–28 (1888).

In 1869, the Texas Constitution art. XII § 30, added the allowance of a recovery for exemplary damages for a "homicide through willful act or omission," regardless of the existence of any criminal proceeding arising from the homicide. *See Houston &*

*T. C. Ry. v. Baker, supra,* at 423–424. Later, the Texas Constitution of 1876, in art. XVI § 26, expanded the right to recover exemplary damages to situations when the homicide was committed through willful act, willful omission, or gross negligence. The implementing statute, which was never attacked for its unconstitutionality before its amendment in 1887, limited recovery to actual damages. Sayles, *supra,* article 2899.[3] Most of the definitions of gross negligence used today come from this period, which can be termed the "Texas Railroad Statute period."

During the Texas Railroad Statute period there were at least four different attempts by this court to define gross negligence. The first was *Southern Cotton Press and Manufacturing Co. v. Bradley,* 52 Tex. 587 (1880), in which plaintiff sought recovery for the death of his wife caused by the discharge of steam from the defendant's plant. The court at 600–601 said:

> Gross negligence, to be the ground for exemplary damages, should be that entire want of care which would raise a presumption of a conscious indifference to consequences. Such indifference is morally criminal, and if it leads to actual injury may well be regarded as criminal in law . . . . A mere act of omission or non-feasance, to be punishable by exemplary damages, should reach the borderline of a quasi-criminal act of commission or malfeasance.

The *Bradley* court cites the case of *Milwaukee and St. Paul Ry. v. Arms,* 91 U.S. 489, 23 L.Ed. 374 (1875). The *Arms* court said at 495:

> "Gross negligence" is a relative term. It is doubtless to be understood as meaning a greater want of care than is implied by the term "ordinary negligence;" but, after all, it means the absence of the care

---

**3.** Art. 2899 provided:

An action for *actual damages* on account of injuries causing the death of any person may be brought in the following cases:

 1. When the death of any person is caused by the negligence or carelessness of the proprietor, owner, charterer, or hirer of any railroad, steamboat, stage coach, or other vehicle for the conveyance of goods or

passengers, or by the unfitness, *gross negligence,* or carelessness of their servants or agents. \* \* \* (emphasis added)

The requirement of gross negligence on the part of servants or agents for the recovery of actual damages was changed to ordinary negligence by the legislature in 1887, by amendment to art. 2899. Acts 1887, 19th Leg., ch. 62, p. 44.

that was necessary under the circumstances. [But to constitute gross negligence authorizing exemplary damages] there must have been some willful misconduct or that entire want of care which would raise the presumption of a conscious indifference to consequences.

Next came the case of *Texas & Pacific Ry. v. De Milley*, 60 Tex. 194, 196 (1883), in which an injury to plaintiff was caused by a broken rail on a track that was in bad condition. Although that court did not define the term gross negligence, Justice Stayton's discussion influenced many trial courts of the time to construct a charge to the jury based upon the following:

... the road was unsafe, and for a long time prior to the injury was known to be so to the [railroad], who, notwithstanding such knowledge, with a conscious and criminal indifference to the safety of passengers, continued to run its trains without repairing its road ....

A charge based upon *De Milley* was given in *Missouri Pacific Ry. v. Mitchell*, 72 Tex. 171, 174–175, 10 S.W. 411, 413–414 (1888).

Justice Stayton's next discussion of gross negligence came in *International & Great Northern Ry. v. Cocke*, 64 Tex. 151, 156 (1885). There, the court included in the definition a new phrase, "so slight a degree of care." The definition was:

Negligence cannot be considered "gross" unless evidenced by an entire failure to exercise care, or by the exercise of so slight a degree of care as to justify the belief that the person on whom care was incumbent was indifferent to the interest and welfare of others.[4]

By 1888, cases in which the *De Milley* type charge was used were reaching this court. In three cases handed down the same day, the court ruled them erroneous. *Missouri Pacific Ry. v. Mitchell, supra; Missouri Pacific Ry. v. Brazzil*, 72 Tex. 233, 10 S.W. 403, 408 (1888); and *Missouri Pacific Ry. v. Shuford*, 72 Tex. 165, 171, 10 S.W. 408, 411 (1888). In *Shuford*, the court

again, Stayton writing, defines gross negligence:

While in a given case, "ordinary care" may not exist, yet there may exist, at least, slight care .... Gross negligence, to be the ground for exemplary damages, should be that *entire want of care* which would raise the belief that the act or omission complained of was the result of a conscious indifference to the right or welfare of the person or persons to be affected by it. (emphasis added)

Of the definitions from this period, the *Shuford* definition is the most cited by the Texas courts down through the years and has never been overturned.

Under the Texas Railroad Statute period cases, jury findings of gross negligence against the railroads were usually set aside by this court which held that the definition in the charge was not that of gross negligence but of ordinary negligence. *Galveston, Harrisburg & San Antonio Ry. v. Kutac*, 76 Tex. 473, 13 S.W. 327 (1890); *Missouri Pacific Ry. v. Brown*, 75 Tex. 267, 12 S.W. 1117 (1889); *but cf. Hays v. Houston and Great Northern R. R. Co.*, 46 Tex. 272 (1876) (suit to recover damages for forcible ejectment of a railroad passenger).

2. *Worker's Compensation Cases.*

The next major legislation to influence the definition of gross negligence was the passage of the Workmen's Compensation Act in 1913. Acts 1913, 33rd Leg., ch. 179, p. 429. Section 5 of that original act preserved the right of a deceased worker's surviving spouse and heirs to recover exemplary damages when the employee's death is occasioned by homicide, through "the wilful act or omission or gross negligence" of the employer. *See Middleton v. Texas Power & Light Co.*, 108 Tex. 96, 185 S.W. 556 (1916). This language is retained in the present statute, article 8306 § 5.

Worker's compensation cases which deal with the awarding of exemplary damages can be divided into three time periods: an

4. This definition is cited in later years by many courts in discussing gross negligence under the Texas Guest Statute, art. 6701b. *See Raub v. Rowe*, 119 S.W.2d 190, 193 (Tex.Civ.App.—El Paso 1938, writ ref'd).

early period, the active/passive period, and the "some care" period. In the early period from 1913 until around 1934, some plaintiffs recovered under both the worker's compensation statute and under a claim of gross negligence. *Morton Salt Co. v. Wells*, 123 Tex. 151, 70 S.W.2d 409 (1934); *Ft. Worth Elevators Co. v. Russell*, 123 Tex. 128, 70 S.W.2d 397 (1934); *Chronister Lumber Co. v. Williams*, 116 Tex. 207, 288 S.W. 402 (Tex.Comm'n App.1926, opinion adopted), *after certification*, 28 S.W.2d 844 (Tex.Civ. App.—Beaumont 1927, no writ); *People's Ice Co. v. Nowling*, 16 S.W.2d 976 (Tex.Civ. App.—Amarillo 1929, no writ). During this period, several decisions also held that there was no evidence of gross negligence. *Robertson v. Magnolia Petroleum Co.*, 255 S.W. 223 (Tex.Civ.App.—Beaumont 1923, writ dism'd); *Tracey v. Wichita Ice Co.*, 30 S.W.2d 673 (Tex.Civ.App.—Ft. Worth 1930, no writ). It was also during this early period that the first hint of a "some care" test surfaced. In *Magnolia Petroleum Co. v. Ford*, 14 S.W.2d 97, 101 (Tex.Civ.App.— Eastland 1929), *writ ref'd, per curiam*, 118 Tex. 461, 17 S.W.2d 36 (1929), the court said, "This very act itself evidencing *some care* takes the transaction out of the definition of gross negligence."

The active/passive period began with the decision of *Texas Pacific Coal & Oil Co. v. Robertson*, 125 Tex. 4, 79 S.W.2d 830 (1935). There the court added a requirement to the *Shuford* definition by holding that gross negligence is positive or affirmative rather than merely passive or negative as ordinary negligence often is. The court focused on the phrase "conscious indifference" and stressed that the key to gross negligence was the mental attitude of the person charged. The court quoted with approval the statement, "The rule is that recovery is permitted in, and confined to, cases where the negligence is wilful, or where it is so gross as to indicate wantonness or malice." Then the court holds at 79 S.W.2d 831:

> Mere indifference is not enough. The indifference must be *conscious*. The indifference is to the rights or welfare of the person or persons who may be affected by the act or omission. Thus the doctrine of foreseeableness becomes important.

Under this active/passive test, a plaintiff employee seeking exemplary damages against an employer has never won.[5]

The last of the cases applying the active/passive test to gross negligence also introduced the "some care" test into the review of gross negligence findings. In *Sheffield Division, Armco Steel Corp. v. Jones*, 376 S.W.2d 825 (Tex.1964), the court embraces the "some care" test while extending the active/passive distinction. *Sheffield* was followed in *Armstrong v. Texas Power and Light Co.*, 399 S.W.2d 922 (Tex.Civ.App.—Tyler 1966, writ ref'd n. r. e.) and again in *Loyd Electric Co. v. DeHoyos*, 409 S.W.2d 893 (Tex.Civ.App.—San Antonio 1966, writ ref'd). In *DeHoyos*, at 897, the court of civil appeals noted that an earlier case allowing recovery for a plaintiff, *Morton Salt Co. v. Wells, supra*, had been disapproved if it allowed recovery without the showing of an *entire* want of care. *See Sheffield Division, Armco Steel Corp. v. Jones, supra* at 829.

The rationale of the "some care" cases is that there cannot be degrees of entire want of care; there is either an entire want of care or there is not. If there is *any* care, i. e., "some" care, then there cannot be an *entire* want of care. A thorough search of the appellate decisions of this state has

---

5. Some of the cases following this test and result are: *Bennett v. Howard*, 141 Tex. 101, 170 S.W.2d 709 (1943); *Magnolia Petroleum Co. v. Booth*, 105 S.W.2d 356 (Tex.Civ.App.— Beaumont 1937, writ ref'd); *Cutler v. Gulf States Utilities Co.*, 361 S.W.2d 221 (Tex.Civ. App.—Beaumont 1962, writ ref'd n. r. e.); *J. S. Abercrombie Co. v. Scott*, 267 S.W.2d 206 (Tex. Civ.App.—Galveston 1954, writ ref'd n. r. e.); *Langston v. Tex-O-Kan Four Mills Co.*, 211 S.W.2d 1020 (Tex.Civ.App.—San Antonio 1948, writ ref'd n. r. e.); *Nichols v. Texas Electric Service Co.*, 206 S.W.2d 860 (Tex.Civ.App.— Eastland 1947, writ ref'd n. r. e.); *H. B. Zachry Co. v. Fullilove*, 177 S.W.2d 980 (Tex.Civ.App. —El Paso 1943, writ ref'd w. o. m.); *Rio Grande Valley Telephone Co. v. Hocut*, 93 S.W.2d 167 (Tex.Civ.App.—El Paso 1936, writ dism'd); *Southwestern Sewer Co. v. Cross*, 93 S.W.2d 202 (Tex.Civ.App.—Austin 1936, no writ).

failed to produce a single case in which the jury's finding of gross negligence against an employer has been upheld on appeal under the "some care" test. *Sheffield Division, Armco Steel Corp. v. Jones,* 376 S.W.2d 825 (Tex.1964); *Loyd Electric Co. v. DeHoyos,* 409 S.W.2d 893 (Tex.Civ.App.—San Antonio 1966, writ ref'd); *Amrstrong v. Texas Power & Light,* 399 S.W.2d 922 (Tex.Civ.App.—Tyler 1966, writ ref'd n. r. e.); *Missouri Valley, Inc. v. Putman,* 604 S.W.2d 545 (Tex.Civ.App.—Amarillo 1980, writ granted); *Delgadillo v. Tex-Con Utility Contractors, Inc.,* 526 S.W.2d 208 (Tex. Civ.App.—Dallas 1975, writ ref'd n. r. e.); *Thomas v. T.C. Bateson Co.,* 437 S.W.2d 386 (Tex.Civ.App.—Dallas 1969, writ ref'd n. r. e.); *Stephens v. Dunn,* 417 S.W.2d 608 (Tex. Civ.App.—Tyler 1967, no writ); *LeJeune v. Gulf States Utilities Co.,* 410 S.W.2d 44 (Tex.Civ.App.—Beaumont 1966, writ ref'd n. r. e.); *Ballenger v. Mobil Oil Co.,* 488 F.2d 707 (5th Cir. 1974); *Woolard v. Mobil Pipeline Co.,* 479 F.2d 557 (5th Cir. 1973); *see* Nations and Bennett, *Recovery of Exemplary Damages Under the Texas Workers' Compensation Act,* 19 S.Tex.L.J. 431 (1978).

3. *Guest Statute.*

In 1931, the legislature enacted the Texas Guest Statute, article 6701b, prohibiting a guest in a motor vehicle from recovering from the owner or operator of the vehicle "unless such accident shall have been intentional on the part of said owner or operator, or caused by his heedlessness or his reckless disregard of the rights of others." Acts 1931, 42nd Leg., ch. 225, p. 379. (Amendment by Acts 1973, 63rd Leg. ch. 29, pp. 41–43, § 3, left this language unchanged.) The guest statute was patterned after the guest statute of Connecticut, Gen.St.Conn. § 1628 (1930), and the Connecticut courts, at

the time of Texas' adoption of the act, had already construed the language "caused by his heedless or his reckless disregard of the rights of others" to mean "gross negligence." *Pfeiffer v. Green,* 102 S.W.2d 1077, 1084–5 (Tex.Civ.App.—Beaumont 1937, no writ). The Texas act was first construed, oddly enough, by the Tennessee Court of Appeals in *Fly v. Swink,* 17 Tenn.App. 627, 69 S.W.2d 902, 906 (1933), in which the court held that the term "heedless and reckless" is equivalent to gross negligence. *Hamilton v. Perry,* 109 S.W.2d 1142, 1143 (Tex.Civ.App.—Texarkana 1937, no writ). This construction was then adopted and approved by the Supreme Court of Texas. *Rowan v. Allen,* 134 Tex. 215, 134 S.W.2d 1022, 1024 (Tex.Comm'n App.1940, opinion adopted); *Schiller v. Rice,* 151 Tex. 116, 246 S.W.2d 607, 615 (1952).

The traditional no evidence test has been used in reviewing guest statute cases.[6] Rather than an active/passive or "some care" test, the meaning of gross negligence in guest statute cases was accomplished by examining the record for some evidence of an entire want of care, looking to all of the surrounding facts and circumstances, not just individual elements or facts. *McPhearson v. Sullivan,* 463 S.W.2d 174 (Tex.1971); *Harbin v. Seale,* 461 S.W.2d 591 (Tex.1970); *Burt v. Lochausen,* 151 Tex. 289, 249 S.W.2d 194, 199 (1952). The "heedless and reckless" definition of gross negligence and the traditional no evidence test have come to be used in automobile cases generally. *Siebenlist v. Harville,* 596 S.W.2d 113, 115 (Tex. 1980).

In several other types of cases not involving workers' compensation, exemplary damages have been allowed without reference to "some care," but rather, the court has focused on whether the acts of the defend-

---

**6.** Some of the guest statute cases are: *Fancher v. Cadwell,* 159 Tex. 8, 314 S.W.2d 820 (1958); *Bernal v. Seitt,* 158 Tex. 521, 313 S.W.2d 820 (1958); *Bowman v. Puckett,* 144 Tex. 125, 188 S.W.2d 571 (1945); *Raub v. Rowe,* 119 S.W.2d 190 (Tex.Civ.App.—El Paso 1938, writ ref'd); *Higgenbotham v. O'Keefe,* 340 S.W.2d 350 (Tex.Civ.App.—Amarillo 1960, writ ref'd n. r. e.); *Union Transports, Inc. v. Braun,* 318 S.W.2d 927 (Tex.Civ.App.—Eastland 1958, writ

ref'd n. r. e.); *Goff v. Lubbock Building Products,* 267 S.W.2d 201 (Tex.Civ.App.—Amarillo 1953, writ ref'd n. r. e.); *Kirkpatrick v. Neal,* 153 S.W.2d 519 (Tex.Civ.App.—Beaumont 1941, writ ref'd w. o. m.); *Glassman v. Feldman,* 106 S.W.2d 721 (Tex.Civ.App.—Amarillo 1937, no writ); *Napier v. Mooneyham,* 94 S.W.2d 564 (Tex.Civ.App.—Eastland 1936, writ dism'd).

ant show a conscious and deliberate disregard of the interest of others so that his conduct may be called willful, wrongful or wanton. *Hood v. Phillips*, 554 S.W.2d 160 (Tex.1977) (medical malpractice); *Atlas Chemical Industries, Inc. v. Anderson*, 524 S.W.2d 681 (Tex.1975) (pollution); *Clements v. Withers*, 437 S.W.2d 818 (Tex.1969) (tortious interference with contract); *Wilson N. Jones Memorial Hospital v. Davis*, 553 S.W.2d 180 (Tex.Civ.App.—Waco 1977, writ ref'd n. r. e.) (negligent employment).[7]

### 4. *Present Definition of Gross Negligence.*

 This is not the first time this court has wrestled with the question of defining gross negligence. In 1943, in *Bennett v. Howard*, 141 Tex. 101, 170 S.W.2d 709 (1943), Justice Sharp writing for the court reviewed the cases much as we have done here. The court reasserted the "entire want of care" rule and rejected the idea advanced in 1934 in *Morton Salt Co. v. Wells, supra,* that gross negligence can exist whether there is an entire want of care *or* when the exercise of "so slight a degree of care" justifies the conclusion that the party was acting with a conscious indifference to the rights and welfare of others. Another exhaustive review of this same history was made in 1964 in *Sheffield Division, Armco Steel Corp. v. Jones, supra,* by Justice Culver. The court reaffirmed *Bennett v. Howard* and further observed that the *Shuford* definition was being used in guest statute cases as well as others. Finally, in a 1966 "writ refused" case, *Loyd Electric Co. v. DeHoyos, supra,* the definition of "entire want of care" was again approved and the "so slight a degree of care" was rejected. All roads lead us back to the acceptance of the *Shuford* definition which reads:

> Gross negligence, to be the ground for exemplary damages, should be that entire want of care which would raise the belief

that the act or omission complained of was the result of a conscious indifference to the right or welfare of the person or persons to be affected by it.

This is substantially the same definition contained in the Pattern Jury Charges, *supra,* § 3.11, promulgated by the State Bar of Texas, in defining "heedless and reckless disregard" suggested for use in automobile cases:

> "Heedless and reckless disregard" means more than momentary thoughtlessness, inadvertence, or error of judgment. It means such an entire want of care as to indicate that the act or omission in question was the result of conscious indifference to the rights, welfare, or safety of the persons affected by it.

As discussed above, "heedless and reckless disregard" and "gross negligence" are synonymous terms. Thus, they should be defined to the jury in the same terms. The definition suggested by the Pattern Jury Charge contains the essential elements.

### REVIEW OF GROSS NEGLIGENCE FINDINGS

We have determined that the correct definition of gross negligence is that set out in the *Shuford* case. The problem in the present case, however, is not so much the definition as it is the application of it. We now turn to an examination of our standard of review in cases involving jury findings of gross negligence. Burk Royalty contends here that there is no evidence of gross negligence.

 In testing a jury finding of gross negligence, the same no evidence test should apply as to any other fact issue. The plaintiff has the burden to prove that the defendant was grossly negligent. If the jury finds gross negligence, the defendant has the burden of establishing that

---

7. There are a number of Texas practice guides which attempt to define gross negligence:

1 Texas Pattern Jury Charges, State Bar of Texas, at 70 (1969); Tillman, Tillman's Trial Guide, at 65 (1970); Thode and Elliott, Personal Injury Litigation in Texas, State Bar of Texas, at 744 (1961); Dorsaneo, 5 Texas Litigation Guide, at 122–51 (1980); Elliott & Edgar, Jr.,

West's Texas Forms: Civil Trial and Appellate Practice, Vol. 9 at 88 (1978); Felts, Mitchell & Ferguson, Moffett's Texas Form Book Anno., at 1009, 10th ed. (1958). Generally, these all follow the *Shuford* definition except for Professor Dorsaneo who adds the phrase "or the exercise of so slight a degree of care."

there is *no evidence* to support the finding. The "some care" test utilized in prior workers' compensation cases improperly reverses that burden. Under the "some care" test the defendant, instead of proving there is *no evidence* to support the verdict, would show there is *some* evidence that does not support the jury finding of gross negligence, i. e., entire want of care. The burden is thus shifted to the plaintiff to negate the existence of some care. This is almost an impossible task since anything may amount to some care. Moreover, the "some care" test does violence to the rule for testing the legal insufficiency of the evidence which requires that only the evidence viewed in its most favorable light and tending to support the jury's finding may be considered. The jury, after all, does not have to believe evidence that "some care" was exercised. When there is *some* evidence of defendant's entire want of care and also *some* evidence of "some care" by the defendant, the jury finding of gross negligence through entire want of care resolves the issue, and the appellate court is bound by the finding in testing for legal insufficiency.[8]

◼ In automobile cases, the existence of "some care" will not vitiate a finding of gross negligence because the court applies the traditional no evidence test to see if there is some evidence to support the jury's finding of gross negligence. The court looks to all of the surrounding facts and circumstances, not just individual elements or facts. *McPhearson v. Sullivan*, 463 S.W.2d 174, 176 (Tex.1971); *Harbin v. Seale*, 461 S.W.2d 591, 593 (Tex.1970). If the "some care" test were applied to automobile cases, a jury's finding of gross negligence would be defeated if (1) the driver had both hands on the wheel, or (2) the driver was watching where he was going, or (3) the driver did not attempt to "brake" when his car was in a skid.

This court has also refused to follow the "some care" review standard in other type cases invoking gross negligence. In *Atlas Chemical Industries, Inc. v. Anderson*, 524 S.W.2d 681, 688–9 (Tex.1975), we upheld a finding of gross negligence for the discharge of industrial waste resulting in damage to another's land. Despite defendant's evidence of its efforts "to reduce the harmful quality of the effluents by accepted control devices, and to reduce and eventually eliminate the suspended solids," this court said:

> Conceivably the pollution of Potter's Creek could have continued despite efforts to correct it which, though not meeting the standard of reasonableness, would have demonstrated that Atlas acted with at least some concern for the consequences to downstream property owners. If efforts were made, this record is silent about them. For years Atlas was in violation of its state permit and doing harm to the public waters and the property of others. Atlas shows no explanation or justification and apparently did nothing *of any significance* to meet the problem. The jury was entitled to conclude that Atlas made the business decision to continue the discharge of its waste and did so with conscious indifference to the rights of others. Therefore we have a proper basis for an award to this plaintiff of exemplary damages. (emphasis supplied)

The United States Court of Appeals for the Fifth Circuit, in applying Texas law to a wrongful death action against a railroad, rejected the "some care" test urged by the railroad. *Broussard v. Southern Pacific Transp. Co.*, 625 F.2d 1242 (5th Cir. 1980). Citing *Atlas Chemical*, the court observed:

> The holding in *Atlas Chemical* establishes that evidence of slight care will not always be enough to bar exemplary damages. Instead, in determining whether a defendant is liable for gross negligence, the question is whether, in light of all the surrounding circumstances, the defendant failed to exercise care, or exercised so slight a degree of care, that one can say the defendant was consciously indifferent to the interest of others. Id. at 1245.

8. The dissenting opinion fails to discuss this elementary rule of law. This is significant because the rule cannot be reconciled with the "some care" test advocated in the dissent.

In testing the jury finding of gross negligence, the phrase "entire want of care" must be understood in the context of the whole sentence. The jury is not simplistically instructed that it must find an "entire want of care," but "... *such an entire want of care as* ... shows the act or omission was the result of conscious indifference ...." If more than one act or omission is alleged and evidence produced to support them, the phrase "acts or omissions" should be used. The essence of gross negligence is not the neglect which must, of course, exist. What lifts *ordinary* negligence into *gross* negligence is the mental attitude of the defendant; that is what justifies the penal nature of the imposition of exemplary damages. The plaintiff must show that the defendant was consciously, i. e., knowingly, indifferent to his rights, welfare and safety. In other words, the plaintiff must show that the defendant knew about the peril, but his acts or omissions demonstrated that he didn't care. Such conduct can be active or passive in nature. We disapprove language in prior cases suggesting that a distinction should be made between them in determining the existence of gross negligence.

No justification exists for having a different standard for reviewing gross negligence findings in employer cases than in other type cases. Accordingly, we disapprove the use of the "some care" test in determining legal sufficiency points and overrule those cases applying it. *Sheffield Division, Armco Steel Corp. v. Jones*, 376 S.W.2d 825 (Tex.1964); *Loyd Electric Co. v. DeHoyos*, 409 S.W.2d 893 (Tex.Civ.App.—San Antonio 1966, writ ref'd); *Armstrong v. Texas Power & Light*, 399 S.W.2d 922 (Tex.Civ.App.—Tyler 1966, writ ref'd n. r. e.); *Missouri Valley, Inc. v. Putman*, 604 S.W.2d 545 (Tex.Civ.App.—Amarillo 1980, writ granted); *Delgadillo v. Tex-Con Utility Contractors, Inc.*, 526 S.W.2d 208 (Tex. Civ.App.—Dallas 1975, writ ref'd n. r. e.); *Thomas v. T. C. Bateson Co.*, 437 S.W.2d 386 (Tex.Civ.App.—Dallas 1969, writ ref'd n. r. e.); *Stephens v. Dunn*, 417 S.W.2d 608 (Tex. Civ.App.—Tyler 1967, no writ); *LeJeune v. Gulf States Utilities Co.*, 410 S.W.2d 44 (Tex.Civ.App.—Beaumont 1966, writ ref'd

n. r. e.). We further hold that the same "no evidence" test utilized in *McPhearson* and *Harbin* is the proper method of review to be used in workers' compensation cases as in all gross negligence cases.

In determining whether there is some evidence of the jury's finding of gross negligence, the reviewing court must look to all of the surrounding facts, circumstances, and conditions, not just individual elements or facts. *Siebenlist v. Harville, supra*, at 115. At first glance there may appear to be some conflict in utilizing the traditional no evidence test and considering all the facts and circumstances to determine gross negligence. The *McPhearson* and *Harbin* cases indicate that the existence of gross negligence need not rest upon a single, act or omission, but may result from a combination of negligent acts or omissions, and many circumstances and elements may be considered in determining whether an act constitutes gross negligence. A mental state may be inferred from actions. All actions or circumstances indicating a state of mind amounting to a conscious indifference must be examined in deciding if there is some evidence of gross negligence.

"In making this determination, all evidence must be considered in a light most favorable to the party in whose favor the verdict has been rendered, and every reasonable inference deducible from the evidence is to be indulged in such party's favor." *Harbin v. Seale*, 461 S.W.2d 591, 592 (Tex.1970). *Accord: Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965).

The evidence favorable to the jury's finding of gross negligence was: the company's safety director, Harlan Baker, spent 21 years in military service and was not familiar with the American Petroleum Institute's industry safety standards, was not aware of any safety standards relating to pulling wet tubing, and was not familiar with or knowledgeable about oil and gas production. Stephen Van Meter, one of the crew, had never been to a safety meeting, was never shown a copy of any safety rules, nor had he been instructed about safety in five or six weeks on Billy Lay's crew. Nei-

ther Swetnam, the District Superintendent responsible for safety, nor Baker had ever said anything to him about safety. On the day of Walls' death, Swetnam said nothing about fires or safety. Van Meter and the other crew members smoked on the rig; Van Meter was not aware of any rule against it. He didn't believe there was a no-smoking sign on the rig. The crew had a fire built in a bucket where they would warm themselves. The fire was just behind the pump jack of the rig and burned diesel fuel. David Barnes, another crew member, testified the fire was 40–50 feet from the well. Billy Lay, the operator, said he didn't know if there were any fire extinguishers on the rig or not. He said he smoked on the rig as did others. He didn't know if he was even assigned any fire extinguishers. He placed the fire about 25–30 feet from the well. Lay said there were two safety meetings a year during supper at a restaurant, but attendance was not required. Contrary to Swetnam's assertion, Lay stated no monthly safety meetings were ever held. Lay stated that he "never did really pay much attention to the fire extinguishers" and "I don't know if we had [fire extinguishers] on the rig or not." Van Meter testified unequivocally and without contradiction that there were no fire extinguishers on the rig.

There was also evidence that Walls had no quick-release on his safety belt or "geronimo line" to get to the ground quickly in an emergency such as this. This, too, was a violation of the company's own safety rules.[9] The court of civil appeals held there was no evidence that the failure to furnish a quick-release safety belt and geronimo line was a proximate cause of his death because he was never able to extricate himself from his safety belt. This is circular reasoning, however, which begs the question. The fire lasted about a minute, during which time the deceased was seen jumping around, trying to get the safety belt off. The buckle on the safety belt was described by one witness as not of the quick-release

type, but a buckle just "like a belt you put on your blue jeans." The jury was entitled to believe that if he could have got the safety belt off by a quick-release buckle, and if there had been a geronimo line or a quick escape mechanism, Walls could have saved his own life.

Further, prior to beginning the pulling operation that day, the foreman, Billy Lay, consulted with Swetnam, the district superintendent in charge of safety in his district, and told him about the problem. Swetnam was told of the presence of the flammable substances in the tubing, but he did nothing. He did not get out of his car, he did not check for safety conditions or safety violations, and he did not give any safety instructions. In fact, he instructed that they not drain the tubing. Harlan Baker, the safety director for Burk Royalty, said he was not aware of *any* safety standards for pulling wet tubing. If there were *no* safety standards, as the jury could believe from the witness, that would constitute still another basis for the jury believing there was an entire want of care. Moreover, the jury also could well infer that the testimony of Swetnam and Baker about the existence of safety meetings, safety rules on bulletin boards and fire extinguishers was untrue or that any safety rules which did exist were just for "show." We hold that there was evidence upon which the jury could base its finding of gross negligence on Swetnam's part.

Burk Royalty concedes in its application to this court that Swetnam was a vice principal of the company and in charge of safety for his district, but argues that Swetnam was not personally responsible for implementing the safety regulations. That responsibility, says Burk Royalty, was delegated to Billy Lay, the rig operator. In *Ft. Worth Elevators Co. v. Russell*, 123 Tex. 128, 70 S.W.2d 397 (1934), this court held that a corporation has the non-delegable duty to provide rules and regulations for

9. Rule 13 of the company's published safety rules reads:

While operating a pulling unit or a workover unit utilizing a derrick man, the driller will

insure that he is wearing a quick release safety belt and that a geronimo line or quick escape mechanism is installed prior to the first trip.

the safety of its employees, to furnish safe machinery and instrumentalities, to provide a safe place to work, and to select careful and competent fellow servants. Viewed in this light Burk Royalty cannot claim that its vice principal's failure to follow its own approved safety standards was the fault of some employee. The responsibility for the failure to have any meaningful safety program for its employees, if the jury so believes, falls within the scope of *Russell* as a non-delegable duty.

## BROAD SUBMISSION OF NEGLIGENCE ISSUE

██ Burk Royalty also attacks the trial court's broad submission of the negligence issue. We hold that the court of civil appeals correctly approved the trial court's broad submission of an issue which asked about negligence in the following words:

Do you find from a preponderance of the evidence that on the occasion in question, Kenneth Swetnam failed to follow approved safety practices for pulling wet tubing?

Burk Royalty argues that there was a variance between the pleadings and proof. This is a pleading problem, one that is handled by objections to the evidence and one which requires distinct objections to the charge which specifically advise the court of each variance. Tex.R.Civ.Pro. 274. The objections leveled at the charge by Burk Royalty do not distinctly point to any specific variance; thus the point was waived. *Davis v. Campbell,* 572 S.W.2d 660, 663 (Tex. 1978).

In *Brown v. American Transfer and Storage Co.,* 601 S.W.2d 931 (Tex.1980), we restated the purpose of Rule 277.[10] We further pointed out that *Scott v. Atchison, Topeka, and Santa Fe Ry.,* 572 S.W.2d 273 (Tex.1978) concerned a situation where the facts plaintiff alleged were left unproved

and the facts that were proved were unpleaded. Variance between pleadings and proof entitled one to complain only when the "wide" variance is substantial, unwaived, and the opposite party has been mislead, surprised, and prejudiced. *Brown v. American Transfer & Storage Co., supra* at 937–938; *Stone v. Lawyers Title Ins. Corp.,* 554 S.W.2d 183, 187 (Tex.1977).

██ The negligence issue in this case was whether the defendant failed to follow approved safety practices for pulling wet tubing. There was no need to ask separate questions about each reason that defendant may have failed to do so. This court has repeatedly written that Rule 277 will be applied as written. In *Mobil Chemical Co. v. Bell,* 517 S.W.2d 245 (Tex.1974), we declared that in a negligence case, the issue may be broadly asked in terms of negligence without breaking into specific inquiries. We restate that rule and state further that this rule applies to ordinary negligence cases, not just cases which concern *res ipsa loquitur.* We approved this form of submission again in *Siebenlist v. Harville,* 596 S.W.2d 113 (Tex.1980), when we upheld the single issue submission of gross negligence.

It is understandable that a rule requiring issues to be submitted "distinctly and separately" which prevailed from 1913 until 1973 would slowly relinquish its hold upon trial practice, but after 1973, Rule 277, as amended, permits the submission of issues broadly even though they include a combination of elements or issues. This court, in addition to the times it has written in the opinions already cited, has on a number of other occasions, approved broad submissions. *Turner v. General Motors Corp.,* 584 S.W.2d 844, 847 n. 1 (Tex.1979); *Scott v. Ingle Bros. Pacific, Inc.,* 489 S.W.2d 554 (Tex.1972); *Haas Drilling Co. v. First Na-*

---

**10.** Rule 277 provides in part:

It shall be discretionary with the court whether to submit separate questions with respect to each element of a case or to submit issues broadly. It shall not be objectionable that a question is general or includes a combination of elements or issues. Inferential rebuttal issues shall not be submitted. The placing of the burden of proof may be accomplished by instructions rather than by inclusion in the question.

In submitting the case, the court shall submit such explanatory instructions and definitions as shall be proper to enable the jury to render a verdict and in such instances the charge shall not be subject to the objection that it is a general charge.

*tional Bank*, 456 S.W.2d 886, 889 (Tex.1970); *Pate v. Tellepsen Const. Co.*, 596 S.W.2d 548 (Tex.Civ.App.—Houston [1st Dist.] 1980, writ ref'd n. r. e.); *Partida v. Park North General Hospital*, 592 S.W.2d 38, 39–40 (Tex.Civ.App.—Beaumont 1979, writ ref'd n. r. e.); *Stoner v. Hudgins*, 568 S.W.2d 898, 902 (Tex.Civ.App.—Ft. Worth 1978, writ ref'd n. r. e.); *Jon-T Farms, Inc. v. Goodpasture, Inc.*, 554 S.W.2d 743, 750 (Tex.Civ. App.—Amarillo 1977, writ ref'd n. r. e.); *State v. Norris*, 550 S.W.2d 386, 387 (Tex. Civ.App.—Corpus Christi 1977, writ ref'd n. r. e.); *Gaber Co. v. Rawson*, 549 S.W.2d 19, 21 (Tex.Civ.App.—Houston [14th Dist.] 1977, writ ref'd n. r. e.); *City of Baytown v. Townsend*, 548 S.W.2d 935, 940 (Tex.Civ. App.—Houston [14th Dist.] 1977, writ ref'd n. r. e.); *Herrera v. Balmorhea Feeders, Inc.*, 539 S.W.2d 84, 85 (Tex.Civ.App.—El Paso 1976, writ ref'd n. r. e.); *Members Mutual Ins. Co. v. Muckelroy*, 523 S.W.2d 77 (Tex.Civ.App.—Houston [1st Dist.] 1975, writ ref'd n. r. e.); *Shasteen v. Mid-Continent Refrigerator Co.*, 517 S.W.2d 437, 439 (Tex.Civ.App.—Dallas 1974, writ ref'd n. r. e.); *Texas Gulf Sulphur Co. v. Gladys City Co.*, 506 S.W.2d 281 (Tex.Civ.App.—Beaumont 1974, writ ref'd n. r. e.).

The practice in non-negligence cases has never required the same rule of specificity that was required by *Fox v. Dallas Hotel Co.*, 111 Tex. 461, 240 S.W. 517 (1922). Prior to 1973, there was one practice for the submission of issues in non-negligence cases and a different one for negligence cases. This was expressly articulated in *Roosth & Genecov Production Co. v. White*, 152 Tex. 619, 262 S.W.2d 99 (1953). The court in *Roosth & Genecov* cited as examples of this unequal treatment *City of Houston v. Lurie*, 148 Tex. 391, 224 S.W.2d 871 (1949), and *Howell v. Howell*, 147 Tex. 14, 210 S.W.2d 978 (1948).

There may be some continuing question about our holdings concerning issue submission because we have not previously overruled those cases which have required a specific issue for each specific element of negligence. We now expressly overrule those cases that arose before the 1973 revision of Rule 277 and which followed the mandate of *Fox v. Dallas Hotel Co.* requiring a submission of "each issue distinctly and separately, avoiding all intermingling" and stating "issues should be restricted to specific acts of negligence alleged and proven." Among those cases we now overrule and disapprove are: *Barclay v. C. C. Pitts Sand & Gravel Co.*, 387 S.W.2d 644 (Tex. 1965); *Kainer v. Walker*, 377 S.W.2d 613 (Tex.1964); *Agnew v. Coleman Elec. Coop., Inc.*, 153 Tex. 587, 272 S.W.2d 877 (1954); *Roosth & Genecov Prod. Co., Inc. v. White*, 152 Tex. 619, 262 S.W.2d 99 (1953); *Solgaard v. Texas & N. O. R. R.*, 149 Tex. 181, 229 S.W.2d 777 (1950); *City of Fort Worth v. Lee*, 143 Tex. 551, 186 S.W.2d 954 (1945); *Walgreen-Texas Co. v. Shivers*, 137 Tex. 493, 154 S.W.2d 625 (1941); *Wichita Falls & O. Ry. v. Pepper*, 134 Tex. 360, 135 S.W.2d 79 (1940); *Fox v. Dallas Hotel Co.*, 111 Tex. 461, 240 S.W. 517 (1922); *Coleman v. Texas & Pac. Ry.*, 241 S.W.2d 308 (Tex.Civ.App.— Dallas 1951, writ ref'd); *Weidmer v. Stott*, 48 S.W.2d 389 (Tex.Civ.App.—Ft. Worth 1932, writ ref'd).

Burk Royalty's other points of error are overruled. The judgment of the court of civil appeals is affirmed.

Dissenting opinion by McGEE, J., in which DENTON and BARROW, JJ., join.

Concurring opinion by GREENHILL, C. J.

GREENHILL, Chief Justice.

I agree that in viewing the record as a whole, there is evidence to support the jury's finding that there was conscious indifference to the safety of Jeffery Walls.

The Court's opinion evidences careful research and strikes out to improve and settle a difficult area of the law. While it overrules a long line of opinions to bring the Court to one simplified rule, it clings to another test for reviewing jury findings on "conscious indifference" which seems to me to be unrealistic.

My problem with the Court's opinion is its use of the "traditional no evidence test" in determining whether there is evidence to support the jury's verdict. While saying it follows the "traditional" test, the opinion

does not. A part of the "traditional no evidence test" is that this Court disregards all evidence unfavorable to the jury's answers. The Court's opinion, it seems to me, consciously removes that part of the "traditional" test and moves down to another; i. e., that [all] the evidence must be viewed in the light most favorable to the jury's verdict.

After all, as our cases say, we are trying to determine whether the defendant acted with conscious indifference to the safety of others. The bottom line, as I read the cases, is the state of mind of the defendant. Did he or she act with callous or conscious indifference to the safety of others? To do that, I suggest that the reviewing court must look at all the facts.

In a large number of our cases, the Court has *not* disregarded all of the acts of the defendant. It has considered the bad and the not-bad elements of the defendant's behavior in reaching the legal conclusion that there is evidence to support the jury's verdict, or not. The use of the words "any," or "some" evidence should not, in my opinion, be dispositive in gross negligence cases.

For example: there is evidence that the defendant, in a non-defective car, continued to drive at 65 miles per hour into a small town. The defendant runs a red light and passes a car over the center line before there is an accident. That is "some evidence" of gross negligence. If the Court considers only that evidence, it must affirm a gross negligence finding. Then the court finds that the defendant's wife and daughter, or other persons, are bleeding to death in the back seat of defendant's car; and they will die if they do not receive immediate medical attention. Will the Court then use the "traditional no evidence test" to evaluate gross negligence? There may be negligence, yes. But is there conscious indifference to human life?

In *Siebenlist v. Harville,* 596 S.W.2d 113 (Tex.1980), the young defendant was "dragging" on the damp streets of a small town. There was no reason for this conduct except excitement. The case did not involve the guest statute. This Court held that from all the facts and circumstances, there was

evidence to support the jury's finding of conscious indifference. We did not (or I did not as author of the opinion) use the "traditional no evidence test."

In *Atlas Chemical Industries, Inc. v. Anderson,* 524 S.W.2d 681 (1975), the original opinion of this Court points out several instances of "care," or "some care" exercised by the defendant. The guest statute was not involved. The case was one of the pollution of a stream by the chemical company. Citing *Sheffield,* the Court's original opinion found "no evidence" of a "complete want of care" by the chemical company. Several items of "care" are listed. On rehearing, the Court reversed itself. We wrote that from other evidence in the case, the jury was entitled to conclude that the chemical company did act with conscious indifference in discharging the pollutants into the stream. The Court did not use the "traditional no evidence test," or the "complete want of care test." It reached its legal conclusion from all of the evidence.

There are several guest statute cases by this Court which, from the opinions as I read them, consider all the evidence. The Court's opinion in this *Burk Royalty* case pays lip service to those holdings by saying that the Court will apply the "traditional no evidence test,"—but it will look to the "facts and circumstances." I am at a loss to understand what "the facts and circumstances" are if it does not mean that the Court will look at all the evidence. Looking at all the evidence and also applying the "traditional no evidence test" are, to me, contradictory.

Thus in *Bowman v. Puckett,* 144 Tex. 145, 188 S.W.2d 571 (1945), the jury found gross negligence. This Court's opinion points out the items of "care" by the defendant. He slowed his car from 70 or 80 miles per hour to 40 or 50 as he entered the small town. He applied his brakes to avoid the accident. The brakes "grabbed" and caused the car to skid. There was evidence that defendant knew that his brakes might "grab." Justice Smedley wrote for us that "the facts in evidence ... *tend* strongly to prove that respondent was acting in a heedless and

reckless disregard . . . ." 188 S.W.2d at 574. [Emphasis mine.] I suggest this is a far cry from the "traditional no evidence test."

The Court's opinion in this case sets out on pages 922 to 923 much evidence of conscious indifference by the agent or agents of Burk Royalty Company. The dissenting opinion sets out evidence of "some care" on page 928. Considering all of the evidence, my conclusion is that there is evidence to support the jury's finding that there was a conscious indifference by Burk Royalty to the safety of Jeffery Walls.

McGEE, Justice, dissenting.

I respectfully dissent.

Recovery of exemplary damages under the worker's compensation statute requires a showing of gross negligence, which has consistently been defined by this Court as that entire want of care which would raise the presumption of a conscious indifference to the consequences. *Sheffield Division, Armco Steel Corporation v. Jones*, 376 S.W.2d 825 (Tex.1964); *Bennett v. Howard*, 141 Tex. 101, 170 S.W.2d 709 (1943); *Loyd Electric Company v. DeHoyos*, 409 S.W.2d 893 (Tex.Civ.App.—San Antonio 1966, writ ref'd). In each of these cases, the court considered the correct standard of review to support a recovery of exemplary damages in worker's compensation cases. Each case concluded that if there is some evidence of care relative to the alleged negligence on the part of the defendant, the evidence fails to meet the requirement that there be an entire want of care.

In *Sheffield*, the plaintiffs urged the court to apply the same standard for reviewing the evidence to both automobile cases and worker's compensation cases. Without conceding that a different standard is in fact applied, we distinguished the automobile cases. Under the guest statute, gross negligence had to be shown to recover compensatory damages. However, the plaintiff in a worker's compensation case has already recovered compensatory damages and is only seeking exemplary or punitive damages. The strictly punitive nature

of the damages to be recovered justifies a higher standard of review for worker's compensation cases. We said:

"Gross negligence, to be the ground for exemplary damages, should be that *entire want of care* which would raise the belief that the act or omission complained of was the result of a *conscious indifference* to the right or welfare of the person or persons to be affected by it." (Emphasis added).

There is no sound reason for overruling this settled rule of law and I would follow the holdings in *Sheffield, Bennett v. Howard*, and *Loyd Electric*. Recent civil appeals court decisions following the *Sheffield* rule include: *Community Properties, Inc. v. Neely*, 611 S.W.2d 947 (Tex.Civ.App.—Tyler 1981, writ pending); *Southwestern Bell Telephone Co. v. Davis*, 582 S.W.2d 191 (Tex. Civ.App.—Waco 1979, no writ); *Jay Fikes and Associates v. Walton*, 578 S.W.2d 885 (Tex.Civ.App.—Amarillo 1979, writ ref'd n. r. e.). *See also: Clements v. Withers*, 437 S.W.2d 818 (Tex.1969); *Wilson N. Jones Memorial Hospital v. Davis*, 553 S.W.2d 180 (Tex.Civ.App.—Waco 1977, writ ref'd n. r. e.).

The majority after full consideration holds that the definition of gross negligence as reaffirmed by this Court in *Sheffield* is correct. Yet, by changing the manner of review, this definition would be significantly changed. It is held that the reviewing court should apply the "no evidence" test. Such review would require the reviewing court to consider only the evidence when viewed in its most favorable light that tends to support a jury finding of gross negligence *and to disregard all evidence of care*. This results in an abandonment of the long settled definition of "gross negligence." It is fundamental that in applying the no evidence test, the reviewing court would not look at the totality of the evidence to determine if the act or omission complained of was the result of a conscious indifference to the right or welfare of the person or persons to be affected by it.

"Entire want of care" is now a misnomer. By changing the scope of review for gross

negligence, we have also changed the way that we define gross negligence. The Court's opinion leaves us with a definition of gross negligence that is called an "entire want of care," but evidence of care by the defendant becomes irrelevant to determine if gross negligence has been established. If, on review, we disregard all evidence of care, we are clearly permitting recovery for less than an entire want of care. The established distinction between ordinary negligence and gross negligence has disappeared. This is particularly true if the reviewing court considers evidence of an employee's conduct which was not found to be gross negligence by the jury, as has been done in this case.

I do not believe that Burk Royalty was guilty of gross negligence under the facts and circumstances of this case. Under the rule announced by the Court today, there must be some evidence that Swetnam was grossly negligent for Burk Royalty to be held liable for punitive damages. Under the "some care" test, we would look to see if there is any evidence of care on the part of Burk Royalty. Walls has not proved her case under either standard.

All of the evidence in this case clearly shows that the operations on the well in this case were routine and not considered highly dangerous by those in the industry. There are two methods discussed for removing fluid from tubing in the process of pulling tubing while servicing a well. The operator could either drop a charge and shoot a hole in the tubing, allowing the fluid to drain, or pull the tubing and swab it dry. The cost is the same for either method. Pulling tubing is a normal part of well servicing, and well servicing is a routine operation. Burk Royalty did a lot of pulling operations at the time of this accident, and had three pulling units working at the time. There is evidence that about 90 percent of all wells "gas" during these operations, meaning that gas will rise to the surface. There is also evidence that it was more unusual, but certainly not rare, for some oil to flow out with the gas. However, this was the first time in at least nine years in this field that oil had ever spewed with such force or that there had been a fire.

The pump broke on this well, necessitating the pulling of the tubing. The well was an old well in a low pressure field, which gave the company no reason to prefer dropping a charge over swabbing the wet tubing. The pulling crew consisted of three men and the operator, Billy Lay, who was the job-site supervisor. He was experienced in conducting pulling operations. There is uncontradicted evidence that they properly bled off the gas pressure at all stages of this operation. There is no evidence of the cause of the fire.

Billy Lay usually consulted with Boyd Ehl, one of the assistant district superintendents for Burk's East Texas operations, concerning the method of removing fluid from tubing during pulling operations. On this particular day, Kenneth Swetnam, the district superintendent, came to the well site to deliver paychecks at about the time that a decision needed to be made concerning the method to be used. The decision was made to use the swabbing method. Swetnam was at the job site for only a few minutes, and was not present at the time of the fire. There is evidence that Burk Royalty has used the swabbing method since that time and does not consider it to be highly dangerous. If it had been considered a potentially dangerous operation, Boyd Ehl would have been present to constantly supervise.

Burk Royalty is being held liable because of the alleged gross negligence of its vice-principal, Kenneth Swetnam. There is nothing in this record to suggest that it was Swetnam's job to inspect the well site for violation of safety rules, namely the presence and location of fire extinguishers, the use of a geronimo line, or the use of quick-release safety belts. It was not Swetnam's job to place fire extinguishers at each job site.

This Court has previously denied recovery of exemplary damages where the plaintiff did not show that it was the personal duty of the employee named in the lawsuit. The general duties of the employer corporation are not automatically the personal duties of every managerial employee. *Weingarten,*

*Inc. v. Moore,* 449 S.W.2d 452 (Tex.1970). See *S. H. Kress & Co. v. Selph,* 250 S.W.2d 883 (Tex.Civ.App.—Beaumont 1952, writ ref'd n. r. e.).

*Bennett v. Howard, supra,* is a case with facts remarkably similar to this one. The plaintiffs based the right to recover exemplary damages on the field superintendent's alleged gross negligence in instructing the crew foreman on the manner of running tubing into a well. We concluded:

"There is nothing in this record to show that Smith disclosed an 'entire want of care' or a 'conscious indifference' to the rights of the men working on the well at the time of the explosion. It is true that Smith gave the general orders as to how the tubing was to be placed in the well, but as to the details of how the work should be done, these seem to have been left to the judgment of the men .... Smith's judgment in ordering the running of the tubing his way may have been wrong. This alone would not justify a recovery of exemplary damages."

Burk Royalty's safety director was Harlan Baker. He was not made a party to this lawsuit, and there was no jury issue inquiring about Baker's negligence or gross negligence, if any.

There were two levels of supervisory personnel below Swetnam, both of which had safety responsibilities. Swetnam was the district superintendent for the entire East Texas area. His duties were to carry out management wishes. As district superintendent, he was generally responsible for safety within the area, to insure that the people working with equipment were aware of safety standards and regulations. Safety rules were promulgated, posted on bulletin boards, and given to every new employee. There is conflicting evidence on the regularity of safety meetings, but safety meetings were held. There were "no smoking" signs posted on this rig and rules concerning smoking. Fire extinguishers were required on every rig, and in every truck. The evidence is contradictory as to the location and number of fire extinguishers on this rig. Fire extinguishers were clearly provided by Burk Royalty. Safety rules also required use of a quick-release safety belt and a geronimo line during pulling operations.

There is no evidence that it was Swetnam's job to personally physically inspect every job site for safety, either on a routine basis or a spot-check basis. Boyd Ehl was responsible for immediate supervision of each well site, as he was the field foreman. His job was to circulate among job locations so that he was at each site three to four times daily. He constantly supervised potentially dangerous situations.

There is direct, uncontradicted testimony that it was Billy Lay's job as the operator to see that fire extinguishers are checked for proper placement. There were no jury issues submitted concerning the negligence or gross negligence of either Boyd Ehl or Billy Lay.

The issue submitted asked if "Kenneth Swetnam failed to follow approved safety practices for pulling wet tubing." There is no evidence that Swetnam violated any approved safety practices in the choice of method for removing fluid from the tubing. There is no evidence to indicate that Swetnam should have personally supervised operations under approved safety standards. In short, there is no evidence that Swetnam was guilty of gross negligence in carrying out any of his safety duties.

The court relies on evidence of negligence on the part of many people other than Swetnam. It also creates inspection duties for Swetnam. It also attempts to make a routine oil field operation into something so highly unusual as to merit the personal supervision of someone in Swetnam's capacity.

This record also shows evidence of "some care" on the part of Kenneth Swetnam and Burk Royalty. Therefore, I would not hold Burk Royalty liable under either standard and would reverse the judgment of the court of civil appeals.

DENTON and BARROW, JJ., join in this dissenting opinion.