Robin Craig SCHWARTZ,
Plaintiff-Appellee,

v.

SEARS, ROEBUCK & COMPANY,
Defendant-Appellant,

The Aetna Casualty & Surety
Company, Intervenor.

No. 80–1951.

United States Court of Appeals,
Fifth Circuit.*
Unit A

March 12, 1982.

Arlen D. Bynum, Royal H. Brin, Jr., Dallas, Tex., for defendant-appellant.

Scott McDowell, Dallas, Tex., for intervenor Aetna Cas. & Sur. Co.

Martin, Sperry & Leboeuf, Derral K. Sperry, Houston, Tex., for plaintiff-appellee.

Before CHARLES CLARK, TATE and WILLIAMS, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

Robin Schwartz filed this diversity action against Sears seeking actual and exemplary damages for injuries that she sustained in a freeway accident on March 31, 1978. Schwartz was driving her Chevrolet down the North Central Expressway in Dallas when a wrecker truck owned by Sears, driven by a Sears employee, and pulling a disabled Sears truck crossed over the freeway median and collided with Schwartz. Schwartz' complaint alleged that the driver had operated the wrecker negligently and that Sears had been grossly negligent in designing a defective wrecker. At trial, Schwartz produced evidence to show that a Sears automotive employee without formal education in engineering or vehicle design had constructed the wrecker based only upon his observations of professionally designed wreckers and without any real effort to calculate necessary weight, length, load distribution, or loadbearing specifications.

The jury returned a verdict finding the Sears driver liable for negligence in operating the wrecker and finding Sears liable for gross negligence in the wrecker's design. In addition to actual damages of $127,000, it awarded $500,000 in exemplary damages. Sears conceded the negligence issue, but submitted a motion for a judgment n.o.v. on gross negligence, which the district court denied. Sears now appeals from the verdict and from the district court's denial of its motion, insisting that the record does not support an award for exemplary damages under Texas law.[1] We disagree and affirm the judgment below.

Texas law on exemplary damages has received considerable attention in recent months from both this court and the Texas Supreme Court. In *Burk Royalty Co. v. Walls*, 616 S.W.2d 911 (Tex.1981), the Texas Supreme Court undertook a new and exhaustive review of this subject. In considering the substantive definition of gross negligence that must go to the jury, the Court reaffirmed the century-old definition announced in *Missouri Pacific Ry. v. Shuford*, 72 Tex. 165, 171, 10 S.W. 408, 411 (1888): Gross negligence is "that entire

---

1. Sears also complains that neither the pleadings nor the pretrial order presented the issue of gross negligence in design. Plaintiff's amended complaint should have put Sears on notice, however, that plaintiff intended to prove gross negligence in design. The complaint expressly attacked Sears' alleged negligence in the "design, fabrication, and installation of the wrecker body ...." Then, in accusing Sears of continuing to use the wrecker despite knowledge of its defects, plaintiff alleged that "such conduct ... together with the acts and omissions alleged elsewhere in this complaint" demonstrated gross negligence.

Moreover, we find no evidence in the record, nor has Sears directed us to any, that Sears ever objected to the pleadings prior to this appeal. Its objections to the charge on gross negligence and, in its motion for judgment n.o.v., to the verdict addressed only the insufficiency of the evidence. We believe, therefore, that the issue of gross negligence in design was tried and argued to the jury with the implied consent of Sears. *See* Fed.R.Civ.P. 15(b); *Norris v. Bovina Feeders, Inc.*, 492 F.2d 502, 505–06 (5th Cir. 1974).

As Sears virtually conceded at oral argument, the only real issue before us is the sufficiency of the evidence to support a finding of gross negligence as defined in Texas.

want of care which would raise the belief that the act or omission complained of was the result of a conscious indifference to the right or welfare of the person or persons to be affected by it."[2] 616 S.W.2d at 920.

Proceeding to its standard for reviewing jury findings of gross negligence, the Texas Supreme Court expressly disapproved the "some care" test established by *Sheffield Division, Armco Steel Corp. v. Jones*, 376 S.W.2d 825 (Tex.1964). Under this standard, "the defendant, instead of proving there is *no evidence* to support the verdict, would show there is *some* evidence that does not support the jury finding of gross negligence, i.e. entire want of care." *Burk Royalty*, 616 S.W.2d at 921 (emphasis in original). In its place, the Court approved "the traditional no evidence test," under which "all evidence must be considered in a light most favorable to the party in whose favor the verdict has been rendered." 616 S.W.2d at 922.

■ Of course, this circuit applies its own standard in reviewing the sufficiency of evidence. That test, as set forth in *Boeing Co. v. Shipman*, 411 F.2d 365, 368 (5th Cir. 1969) (en banc), requires us to consider all of the evidence, drawing all reasonable inferences most favorable to the party opposing the motion. We then must grant a motion for directed verdict or judgment n.o.v. only if the facts and inferences favor the movant so overwhelmingly that reasonable persons could not arrive at a contrary verdict.

■ The strictly procedural aspects of *Burk Royalty* are irrelevant, therefore, to our considerations here. As we recently indicated in *Maxey v. Freightliner Corp.*, 665 F.2d 1367 (5th Cir. 1982) (en banc), however, the Texas Supreme Court's abandonment of the "some care" test may have substantive implications. We read *Burk*

*Royalty* as "emphasiz[ing] that the essential inquiry is not the degree of neglect, *i.e.* whether the defendant exercised 'an entire want of care,' but rather is whether an inference of conscious indifference is raised." *Maxey*, at 1374. In other words, *Burk Royalty* at least discourages the former appellate practice of overturning a jury verdict after scavenging the record for what the Texas Supreme Court described as "some evidence of 'some care.'" 616 S.W.2d at 921. As we concluded in *Maxey*,

[I]t is readily apparent that the court in *Burk Royalty* did not undertake to establish a "bright line" test for determining whether or not a defendant's conduct constitutes gross negligence. Indeed, it appears that the Texas Supreme Court has rejected just such a "bright line" test—*i.e.* the *Sheffield* test—for one that demands more rigorous analysis: rather than simply inquiring whether the defendant exercised some care, the proper focus is on the question whether, in light of all of the surrounding circumstances, the requisite mental state is shown.

At 1374. We then left it to the district court to hear argument, on remand, concerning whether Texas' abandonment of the "some care" procedural standard has any effect in *Shuford*'s substantive requirement of an "entire want of care." At 1375 n.7.

■ We need not determine, or even explore, the substantive limits of *Burk Royalty* in the case before us, for we find the evidence in this record sufficient to support the jury's finding of gross negligence under even the most literal reading of the *Shuford* instruction. The district court properly delivered to the jury the newly reapproved *Shuford* definition of gross negligence. Given the question "Did plaintiff prove that Sears was grossly negligent in its design of the wrecker truck?" the jury responded,

---

2. The Court also approved the use in gross negligence cases of the instruction used to define "heedless and reckless disregard" in Texas automobile cases:

"Heedless and reckless disregard" means more than momentary thoughtlessness, inadvertance, or error of judgment. It means

such an entire want of care as to indicate that the act or omission in question was the result of conscious indifference to the rights, welfare, or safety of the persons affected by it.

616 S.W.2d at 920.

"Plaintiff did prove." Having reviewed all of the evidence and drawn all reasonable inferences favorable to plaintiff Schwartz, we are unable to conclude that the jury acted unreasonably in finding an entire want of care indicative of conscious indifference to plaintiff's safety.

Looking first to the evidence on which the jury might have based this answer, we find that Sears permitted a vehicle maintenance manager, Don Thomas, to design and supervise construction of the wrecker that collided with the Schwartz automobile. Thomas had never designed a wrecker before and had no formal educational background that could qualify him to assume so serious a responsibility. Thomas designed and built the vehicle without any blueprints or specifications, using only his observations of other tow trucks.

The record shows further that Thomas had no idea, from an engineering standpoint, what effect the suspension of multiton vans from the boom of his makeshift wrecker would have on the vehicle's stability. By contrast with other available designs introduced at trial, the Sears wrecker employed a short chassis and boom. It employed none of the available cable systems for shifting the load from behind the rear axle, where it would tend to overbalance the wrecker's front end, to behind the cab. Instead, the boom design placed the greater part of the load behind the rear axle. The owner of a towing business testified that this created an unsafe condition. He further testified that a wrecking truck cannot tow its own weight safely. Thomas testified that the Sears wrecker weighed approximately 11,000 pounds and that he had constructed it to hoist and haul trucks of that weight.

A witness to the accident, David Houchins, testified that he had observed the front end of the Sears wrecker riding "abnormally high" just prior to the collision. The wrecker appeared to have "a light front end on it like the truck it was towing was too much for the truck that it was made for, the wrecker." Houchins also remembered seeing "a little daylight" beneath the wrecker's front tires.

Finally, Alfred Montgomery, the Sears employee who was driving the wrecker prior to the collision, testified to having warned Thomas of his belief that the wrecker was too light for the heavy towing duties imposed on it by Sears. Montgomery had informed Thomas that the Sears wreckers tended to "walk"—sway while moving—when towing heavy loads and that he did not feel safe driving them. Thomas continued to use the wreckers, however, even after the Schwartz collision and serious injury.[3]

Sears responds that the record furnishes ample evidence of its care in designing the wrecker. This evidence consists entirely, however, of Thomas' testimony that he considered the wrecker to be safe and that he had tested the boom configuration under the weight of a truck prior to welding it in place. He also claimed to have taken the wrecker out for a test drive, during which it "handled real well" while towing.

Considering all this evidence and drawing the inferences most favorable to the plaintiff-appellee, we cannot conclude that the trial court erred in submitting the issue of grossly negligent design to the jury or that the jury returned a verdict at which no reasonable jury could arrive. "There must be a conflict in substantial evidence to create a jury question. However, it is the function of the jury as the traditional find-

---

**3.** Sears maintains that the driver's testimony concerning his warnings to Thomas, while perhaps furnishing evidence of negligence in dispatching the wrecker on the day of the accident, does not support the award of exemplary damages because the warnings came long after completion of the original design. We agree with the trial court, however, that the jury reasonably could have inferred from this testimony a studied indifference to safety that existed throughout the period in which these vehicles were designed, constructed, and used. The conscious indifference to safety exhibited by Thomas in keeping the defective wrecker on the road despite warnings of its dangers was probative of his conscious indifference to safety in the original design.

er of the facts, and not the Court, to weigh conflicting evidence and inferences, and determine the credibility of witnesses." *Boeing, supra,* 411 F.2d at 375. After hearing all the evidence and viewing all the witnesses this jury reasonably concluded that Sears' homemade design for a wrecker used in towing five-ton trucks through city traffic was grossly negligent.

Sears insists, nevertheless, that Thomas' testimony concerning his belief that the design was safe, his testing of the truck, and the absence of any malfunction prior to the Schwartz incident at least provides evidence of "some care."[4] Under *Burk Royalty* and *Maxey, supra,* however, evidence of "some care" does not automatically defeat the gross negligence claim. An overall absence of care, under *Shuford,* can still be found, and the jury was properly instructed. Further, drawing the inferences favorable to the verdict, we must also stress that Thomas' testimony is just that: *evidence* of care. The jury may not have credited this evidence or may have concluded that it did not show conduct amounting to care. Either course was, at least, a reasonable approach to the evidence and such a jury conclusion would withdraw any possible substantive impact of *Burk Royalty* from the case.

As the district court noted in its order, the issue is a close one. Close cases are precisely those that our system most readily entrusts to a jury. Whatever view of the evidence we might have taken ourselves, we must "avoid usurping the function of the jury by weighing evidence and judging credibility; our function is limited to determining whether there is a conflict in substantial evidence sufficient to create a jury question." *Two Rivers Co. v. Curtiss Breeding Service,* 624 F.2d 1242, 1249 (5th Cir. 1980), *cert. denied,* 450 U.S. 920, 101 S.Ct. 1368, 67 L.Ed.2d 348 (1981). Finding in the record a substantial evidentiary conflict from which reasonable men might draw differing conclusions, we cannot subvert the jury's determination that Sears' design of the wrecker was grossly negligent. The judgment below is

AFFIRMED.

---

4. Sears further contends that "even if there were proof that Thomas was grossly negligent in the design of this tow truck, the requisites for punishing the corporate defendant Sears for his reckless and wanton design are not present." We need look no further than the Texas Supreme Court's decision in *Fort Worth Elevators Co. v. Russell,* 123 Tex. 128, 70 S.W.2d 397 (1934), to dispose of this argument. The Court in *Russell* held that a corporation is liable in exemplary damages for the gross negligence of a vice-principal, that being "(a) Corporate officers; (b) those who have authority to employ, direct and discharge servants of the master; (c) those engaged in the performance of non-delegable or absolute duties of the master; and (d) those to whom a master has confided the management of the whole or a department or a division of his business...." *Id.* at 406. Whether or not Thomas qualifies as manager of a Sears department or division, he certainly had been performing the non-delegable duty "to furnish reasonably safe machinery or instrumentalities with which [the corporation's] servants are to labor." *Id.* at 401. We consider it beyond dispute that Thomas, in designing and building wreckers to be driven by Sears employees on public highways, was a vice-principal and that Sears is liable for any gross negligence in his design.