Frank **MAXEY and Mary Amanda Maxey, Individually and as Next Friends of Mary Kathryn Maxey and Carroll Kaylene Maxey, Minors, Plaintiffs-Appellants,**

v.

**FREIGHTLINER CORPORATION, Defendant-Appellee.**

No. 83–1079.

United States Court of Appeals, Fifth Circuit.

Jan. 19, 1984.

Rehearing and Rehearing En Banc Denied March 1, 1984.

damages from the $10,000,000 such damages awarded by the jury.

We reverse the district court's grant of judgment notwithstanding the verdict, Fed. R.Civ.P. 50(b), as to the punitive damages awarded by the jury, for we find the district court erred in refusing to consider testimony of the defendant's post-manufacture indifference to safety considerations as probative evidence from which the trial jury might infer the defendant manufacturer's conscious indifference (the test for awarding punitive damages) at the time of manufacture with regard to the unreasonably dangerous design of its truck. However, we affirm, as within the directions on remand, the district court's alternative determination that a remittitur should be granted as to the punitive damages awarded by the jury.

*Factual and Procedural Context*

The plaintiffs Maxey, grandparents, as next friends, brought suit on behalf of their orphaned grandchildren for the wrongful death of the children's parents, who were burned to death on November 21, 1974, when their truck tilted on its right side and slid to a stop. The truck had been manufactured by the defendant manufacturer in 1963. As designed and manufactured, the light-weight aluminum fuel tanks were to be attached to the outside of the truck framerails. Following the accident, the right fuel tank had ruptured, spilled its fuel, and ignited. Made defendant on a Texas product liability cause of action was the manufacturer of the truck ("Freightliner"), on allegations that Freightliner's conduct in the design, testing, and sale of trucks with this fuel system amounted to gross indifference, entitling the plaintiffs to an award of both actual and exemplary damages under Texas law.

The trial jury determined that the plaintiffs Maxey were entitled to recover both compensatory and punitive damages against Freightliner, the defendant truck manufacturer, for the wrongful death of their decedents, who were found by the jury to have been burned to death as the result of the unreasonably dangerous design

Windle Turley, Randall R. Moore, Dallas, Tex., for plaintiffs-appellants.

Elliott, Churchill, Hansen, Dyess & Maxfield, Thomas G. Nash, Jr., Strasburger & Price, Royal H. Brin, Jr., Dallas, Tex., for defendant-appellee.

Before BROWN, THORNBERRY and TATE, Circuit Judges.

TATE, Circuit Judge:

In this Texas diversity case, we had previously remanded this case to the district court for it to make two determinations with regard to the award of exemplary damages. 665 F.2d 1367 (5th Cir.1982) (en banc). Pursuant thereto, the district court held (a) that the evidence did not support a jury award to the plaintiffs of such punitive damages (based under Texas law upon gross negligence), but (b) that, if the appellate court disagreed, the defendant was entitled to a remittitur to $450,000 punitive

of the truck's fuel system. As to the punitive damages awarded, the district court granted the defendant's motion for judgment notwithstanding the verdict, 450 F.Supp. 955 (N.D.Tex., 1978), a ruling initially affirmed by a divided panel, 623 F.2d 395 (5th Cir.1980), but vacated by the en banc court on rehearing, 665 F.2d 1367 (5th Cir.1982) (en banc). The award of $150,000 compensatory damages was upheld.

In vacating and remanding, the en banc court directed the district court, as to the punitive damage award, to reconsider its ruling that granted Freightliner's motion for judgment notwithstanding the verdict in light of *Burk Royalty Company v. Walls,* 616 S.W.2d 911 (Tex.1981), a controlling Texas state decision that had been decided subsequent to the district court's initial decision, *see* 665 F.2d at 1374, and we also (in response to an issue of the appeal and, inferentially, to expedite ultimate finality of a decision) held that the jury award of $10,000,000 punitive damages was excessive and directed the district court to reconsider, *see* 665 F.2d at 1379, its previous determination that, if punitive damages were indeed awardable, the amount of the jury award was within the range of substantive law, 450 F.Supp. at 966.

On the remand, in response to these directions, the district judge held (1) that there was no evidence of probative force from which a jury could properly infer gross negligence so as to justify an award of punitive damages, and (2) that, if punitive damages were awardable, it would order a remittitur of all damages in excess of a sum equal to three times the jury-found compensatory damages of $150,000 in the event that "a higher court disagrees with my judgment that there was insufficient evidence to support an award of punitive damages." The plaintiffs appeal both determinations.

### Exemplary Damages Under Texas Law

In our en banc opinion remanding this case, we described the development of the Texas jurisprudence concerning punitive damages, and we noted the recent reformulation of the Texas test for their recovery in *Burk Royalty Company v. Walls,* 616

S.W.2d 911, (Tex.1981) to the effect that "the essential inquiry is not the degree of neglect, *i.e.,* whether the defendant exercised 'an entire want of care,' but rather is whether an inference of conscious indifference is raised." 665 F.2d at 1374. Continuing, we quoted from *Burks,* 616 S.W.2d at 922 (emphasis in original):

The essence of gross negligence is not the neglect which must, of course, exist. What lifts *ordinary* negligence into *gross* negligence is the mental attitude of the defendant; that is what justifies the penal nature of the imposition of exemplary damages. The plaintiff must show that the defendant was consciously, *i.e.,* knowingly, indifferent to his rights, welfare, and safety. In other words, the plaintiff must show that the defendant knew about the peril, but his acts or omissions demonstrated that he didn't care.

Here, in response to a special interrogatory, the jury found that exemplary damages were awarded by reason of the "gross indifference" of the defendant Freightliner. As we stated in our opinion remanding this case, a judgment notwithstanding the verdict on this issue

should be granted only when the facts and inferences point so strongly and overwhelmingly in favor of the moving party that reasonable persons could not arrive at a contrary verdict. The court should consider all of the evidence—not just that evidence which supports the nonmovant's case—but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If there is substantial evidence opposed to the motion, that is, evidence of such quality and weight that reasonable and fairminded persons in the exercise of impartial judgment might reach different conclusions, the motion should be denied, and the case submitted to the jury. A mere scintilla of evidence is insufficient to present a question for the jury. A motion for directed verdict or judgment n.o.v. should not be decided by which side has the better of the case, nor should the motion be granted only when there is a complete absence of probative facts to support a

jury verdict. There must be a conflict in substantial evidence to create a jury question. However, it is the function of the jury as the traditional finder of fact, and not the court, to weigh conflicting evidence and inferences, and to determine the credibility of witnesses.

665 F.2d at 1371.

■ On the remand, in reinstating judgment notwithstanding the verdict and thus rejecting the jury award of punitive damages, the district court found a lack of probative evidence before the jury of the defendant manufacturer's "conscious indifference" at the time of manufacture of the truck in 1963. Noting that the plaintiffs' proof was not focused upon this date, the district court observed: "While data developed after manufacture is relevant to the strict liability inquiry of whether a product was defective when manufactured it brings little light to the fault based inquiry behind punitive damages . . . [in which] the focus [is] on time of manufacture."

In this ruling the district court erred. In *Schwartz v. Sears, Roebuck & Company,* 669 F.2d 1091 (5th Cir.1982), we rejected similar contentions where advanced as a reason for setting aside a jury award of Texas exemplary damages for gross negligence in a vehicle's design. We there stated, 669 F.2d at 1094 n. 3:

> We agree with the trial court, however, that the jury could reasonably have inferred from this testimony a studied indifference to safety that existed throughout the period in which these vehicles were designed, constructed, and used. The conscious indifference to safety exhibited by [the defendant's manager] in keeping the defective wrecker on the road despite warnings [*"long after completion of the original design"*] of its dangers was probative of his conscious indifference to safety in the original design.

As the district court inferentially suggested, much probative evidence was introduced as to events and attitudes after the 1963 date of manufacturer from which the jury might infer a conscious indifference of Freightliner to the potential danger posed users of its trucks as so designed, with lightweight tanks—easily capable of rupture upon impact—side-mounted on the exterior in an anticipated impact area, in close proximity to the exhaust system, which had the capability of igniting diesel fuel loosed from a ruptured tank.

Although Freightliner commenced manufacturing the trucks with this fuel system design in the 1950's, it neglected to test its product before marketing and in the succeeding years. It made no effort to modify its fuel tank design or placement or to conduct further tests after a 1965 drop test demonstrated tank ruptureability. Freightliner never crash tested an old or new truck with such tanks, and never considered doing so, although the evidence indicates that the crash-danger of placing fuel tanks in impact areas was a subject of theoretical critique since the 1940's, so that, consequently, crash-resistant fuel systems had been developed, for instance, for Army helicopters and Indianapolis race cars.[1] The defendant Freightliner's annual budget has never and does not now include any items concerned with crash safety, nor does the company employ a crash safety expert on its staff.

Freightliner personnel at one service branch in Portland developed statistics indicating that some 43% of all accidents involved directly exposed side mounted fuel tanks, but the company continued to place unprotected lightweight aluminum tanks within one inch of the outside edge of the truck. The defendant's witness testified that between 16% and 18% of the fleet are involved in serious accidents every year and that the chances of injury increases tenfold

1. In our remand opinion, we noted that "it requires no special knowledge of automobile construction to recognize that the use of large, unshielded, side-mounted fuel tanks is not a design common to the domestic automobile industry," 665 F.2d at 1376 n. 9, and we found "particularly noteworthy . . . that the only evidence of industry custom [an industry standard promulgated, inter alia, by the Bureau of Motor Carrier Safety] requiring a gasoline tank to be capable of withstanding a 30-foot drop onto concrete without spillage, was excluded by the district court." *Id.*

if the truck catches on fire. Even with knowledge of all of the above, a Freightliner representative testified, even at the late date of trial, that a truck laying on its side with the occupants inside the truck and fuel spilled and ignited was not sufficient in and of itself to present a substantial risk of harm so as to justify a change in design.

Thus, from probative evidence before the jury, it could reasonably infer a conscious and studied indifference on the part of Freightliner at the time of manufacture, as well as continuously thereafter, to the grave danger of ignitable fire upon impact arising from its noncrash-resistant fuel system.

Accordingly, we reverse the district court judgment insofar as it granted a judgment notwithstanding the verdict on the award for exemplary damages.

### Award for Exemplary Damages

The district court jury awarded the plaintiffs, as next friends of the two orphaned Maxey children, the sum of $10,000,000 in exemplary damages. The en banc court, in reviewing Freightliner's cross-appeal on the amount of the award, disapproved the amount of punitive damages and also remanded the issue to the district court for its reconsideration of the amount in light of directions by the court. 665 F.2d at 1379.

The en banc court did not suggest the exact amount of exemplary damages, or the exact proportion they should bear to the compensatory damages of $150,000. Nevertheless, the en banc court's directions to the district court on remand included observations, inter alia, that, under Texas law, the amount of exemplary damages should be reasonably proportioned to the amount of actual damages found in the light of five specified factors, that a formula of punitive damages to three times the amount of compensatory damages is often a fairly good standard by which to assess whether a jury has abused its discretion in the award of Texas exemplary damages, and that in the present case a critical factor lessening Freightliner's degree of culpability upon which to base the amount of such award was that crashworthy designs of the nature here suggested were not employed by other commercial truck manufacturers. 665 F.2d at 1377–78.

Responding to the en banc court's instructions, the district judge held that, "[g]iven the majority opinion, I would order a remittitur of all punitive damages in excess of a sum equal to three times the actual damages, if a higher court disagrees with my judgment that there was insufficient evidence to support an award of punitive damages." The plaintiffs appeal this conditional finding of the district court, which was made pursuant to the remand instructions of the en banc court.

Both the en banc court, presumably, and the district court, certainly, were fully aware of the record contents in affording and following the en banc instructions on the reduction as excessive of the exemplary damages that were awarded by the trial jury. In affording these instructions for remand in the light of the particular record before it, the en banc was undoubtedly familiar with the principle expressed in *Gorsalitz v. Olin Mathieson Chemical Corporation,* 429 F.2d 1033, 1047 (5th Cir.1970), modified on other grounds, 456 F.2d 180, cert. denied, 407 U.S. 921, 92 S.Ct. 2463, 32 L.Ed.2d 807 (1972), and succeeding decisions, that, although a remittitur will be reversed only if the party opposed to the remittitur shows an abuse of discretion on the part of the trial court, nevertheless the trial court abuses its discretion if it requires remission of a sum that would reduce the verdict below the maximum award that is reasonably supported by the evidence.

Especially in view of the remand instructions given by the en banc court, which were based upon the particular facts of the present record, we are unable to hold that the district court abused its discretion by finding that it would order remittitur of the exemplary damages awarded insofar as in excess of $450,000 (three times the award of compensatory damages). We therefore affirm its holding in this respect.

### Conclusion

For the foregoing reasons: we VACATE the order on remand insofar as it reinstated its judgment sustaining the defendant

Freightliner's motion for judgment notwithstanding the verdict as to the award of exemplary damages; we AFFIRM the district court's conditional holding pursuant to instructions on the remand that, if the reviewing court finds the exemplary damages are awardable, then it will condition the denial of the defendant's motion for a new trial upon the plaintiff's accepting a remittitur of all punitive damages in excess of three times the actual damages awarded; and we REMAND this case to the district court for further proceedings consistent with this opinion. The defendant Freightliner to pay the costs of this appeal.

VACATED IN PART; AFFIRMED IN PART; AND REMANDED.