**Motion for Rehearing Denied; Opinion of August 23, 2022 Withdrawn; Affirmed in Part, Reversed and Rendered in Part, Remanded, and Substitute Opinion filed November 10, 2022.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-21-00604-CV

---

**THE CITY OF HOUSTON, Appellant**

**V.**

**DAVID GILBERT, MARINA CHARLES, AS NEXT FRIEND OF E.L., A MINOR CHILD, CHRISTIAN COLEMAN, INDIVIDUALLY AND AS NEXT FRIEND OF M.R. AND T.R., MINOR CHILDREN, AND BOBBY RAY, AS NEXT FRIEND OF M.R. AND T.R., MINOR CHILDREN, Appellees**

---

**On Appeal from the 234th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2019-90084A**

---

### S U B S T I T U T E   O P I N I O N

We deny appellant's motion for rehearing. We withdraw our opinion of August 23, 2022 and issue the following substitute opinion in its stead.

The City of Houston appeals the denial of its plea to the jurisdiction in this personal injury suit arising from electrocution injuries suffered by two girls while practicing little league softball at a city-owned park. Other relatives also asserted personal injury and bystander claims. The key issues for jurisdictional purposes are whether the plaintiffs paid for use of the park premises and thus enjoy status as property invitees rather than licensees,[1] and whether the City had actual knowledge of the alleged unreasonably dangerous condition.

We hold:

(1) regarding plaintiffs/appellees E.L. and M.R., the trial court did not err in denying the City's plea because a fact issue exists whether they paid for use of the premises on the day of the incident;

(2) regarding plaintiff/appellee Gilbert, the trial court erred in denying the City's plea because Gilbert's status as a licensee is established conclusively, and he failed to raise a fact issue concerning the City's actual knowledge or gross negligence; and

(3) regarding the bystander claims, the trial court did not err in denying the City's plea because M.R.'s claim, upon which the bystanders rely, potentially remains viable.

Accordingly, we affirm in part, reverse and render in part, and remand for further proceedings consistent with this opinion.

**Background**

On September 11, 2019, appellees E.L. and M.R.—both seven to nine years old—were participating in little league softball practice organized by the Lindale

---

[1] *See* Tex. Civ. Prac. & Rem. Code § 101.022(a).

Little League at ballfields located in Moody Park, which is owned, operated, and maintained by the City of Houston. Attending the practice were appellee David Gilbert (E.L.'s step-grandfather), appellee Christian Coleman (M.R.'s mother), and appellee T.R. (M.R.'s sister).

Moody Park has two ballfields adjacent to each other. Partially buried in the ground area between the fields is a concrete electrical "pass-through" box that houses electrical cables or wires necessary to light the fields at night. The cover of this box is metal. During a practice break, E.L. made physical contact with the cover, which was accidentally energized with electricity.[2] M.R. attempted to pull E.L. away from the box, but she was unable to escape the electric current. Witnessing the incident, Gilbert rushed to help and managed to break the children free, but he too was injured in the process. According to witnesses, both girls were lying on the ground and "unresponsive" after the incident but were revived through CPR. E.L.'s hands were burned, and she was bleeding from her nose and mouth. Both girls were transported to the hospital in an ambulance. Coleman and T.R. saw these events at a close distance.

Gilbert sued the City, the League, and various other defendants for personal injuries based on allegations of negligent activity, premises liability, negligence, negligence per se, and gross negligence. The other appellees joined the suit later and asserted similar claims, including bystander liability claims by Coleman and T.R. As to the City, appellees pleaded that they paid money directly or indirectly to the City for use of the park premises and for that reason they were invitees on the City's property on the day in question, that the City had actual or constructive

---

[2] At this stage of the proceedings, it is believed that an uninsulated, energized wire within the box came into contact with the cover.

knowledge of the dangerous condition, and that the City engaged in willful, wanton, or grossly negligent conduct.

The City filed a plea to the jurisdiction, asserting that appellees had not shown a waiver of governmental immunity under the Texas Tort Claims Act (the "TTCA"). The City argued that: (1) appellees were licensees, not invitees, because they did not pay a specific fee for entry onto and use of the park; (2) the City had no actual knowledge of the dangerous condition; and (3) the City did not commit any willful, wanton, or grossly negligent act. In their response, appellees argued that they were invitees, rather than licensees, because they paid for use of the park, and thus they were not required to show that the City had prior actual knowledge of the premises defect. At a minimum, appellees argued, a fact issue existed regarding their status. Appellees contended in any event that the City had actual knowledge of the premises defect even assuming they were licensees. The trial court denied the City's jurisdictional plea.

After the court severed the plaintiffs' claims against the City from the claims against the other defendants, the City timely filed this interlocutory appeal. *See* Tex. Civ. Prac. & Rem. Code § 51.014(a)(8).

**Analysis**

In a single issue, the City contends the trial court lacked subject matter jurisdiction over appellees' claims because they are barred by governmental immunity. According to the City, appellees have failed to establish a waiver of governmental immunity for their premises liability claims because appellees were licensees at the time of their injuries, and the City lacked actual knowledge of the allegedly dangerous condition. Further, the City contends that appellees failed to demonstrate gross negligence and otherwise failed to demonstrate a waiver of immunity for the bystander claims.

4

## A. Standard of Review and Analytical Framework

The common law doctrine of governmental immunity protects political subdivisions of the state from suit when they perform governmental functions.[3] *See Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 n.3 (Tex. 2003). Governmental units may be sued only when the legislature has waived the unit's immunity in clear language. *See* Tex. Gov't Code § 311.034; *Tex. Parks & Wildlife Dep't v. Sawyer Tr.*, 354 S.W.3d 384, 388 (Tex. 2011). The TTCA waives governmental units' immunity from suit in certain areas when the statutory requirements are met, including, as relevant here, cases arising from alleged premises defects. *See Sampson v. Univ. of Tex. at Austin*, 500 S.W.3d 380, 384 (Tex. 2016); *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224-25 (Tex. 2004). The waiver of immunity applies if the employee or governmental unit would be liable to the claimant according to Texas law. *See* Tex. Civ. Prac. & Rem. Code §§ 101.021(1)(B), (2), 101.025.

If a government defendant is immune from suit, the trial court has no subject matter jurisdiction to hear the case against it, and the defendant may properly challenge the suit in a plea to the jurisdiction. *See Miranda*, 133 S.W.3d at 225-26. We review jurisdictional questions like these de novo. *See State v. Holland*, 221 S.W.3d 639, 642 (Tex. 2007).

A plaintiff bears the burden of establishing a waiver of immunity under the TTCA. *See Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 542 (Tex. 2003). A governmental unit challenging whether a claimant has met this burden may, by a plea to the jurisdiction, contest the pleadings, the existence of jurisdictional facts, or both. *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 770 (Tex. 2018).

---

[3] The governmental functions of municipalities, such as the City of Houston, include "parks." Tex. Civ. Prac. & Rem. Code § 101.0215(a)(13).

If a plea challenges the pleadings, we determine if the pleader has alleged facts that "affirmatively demonstrate the court's jurisdiction to hear the cause." *Miranda*, 133 S.W.3d at 226. We construe the pleadings liberally in favor of the plaintiff, look to the pleader's intent, and accept as true the unchallenged factual jurisdictional allegations in the pleadings. *Buzbee v. Clear Channel Outdoor, LLC*, 616 S.W.3d 14, 23 (Tex. App.—Houston [14th Dist.] 2020, no pet.) (citing *Miranda*, 133 S.W.3d at 226). If the pleading is sufficient to demonstrate jurisdiction, and if the defendant does not challenge the plaintiff's factual allegations with supporting evidence, then our inquiry ends. *Id.*; *see Miranda*, 133 S.W.3d at 227-28; *see also City of Jacksboro v. Two Bush Cmty. Action Grp.*, No. 03-10-00860-CV, 2012 WL 2509804, at *5 (Tex. App.—Austin June 28, 2012, pet. denied) (mem. op.). Like the jurisdictional question itself, the sufficiency of a claimant's pleading to establish a waiver of immunity is a legal issue we review de novo. *Miranda*, 133 S.W.3d at 226.

When, on the other hand, a plea to the jurisdiction challenges the existence of jurisdictional facts, we look beyond the pleadings and consider evidence submitted by the parties when necessary to resolve the jurisdictional issues raised, even if the evidence implicates both the court's jurisdiction and the merits of a claim. *Id.* at 227. For a plea that challenges the existence of jurisdictional facts, our standard of review generally mirrors that of a traditional summary judgment: a plaintiff must raise a genuine issue of material fact to overcome the challenge to the trial court's jurisdiction. *Id.* at 221, 228. In determining whether a plaintiff has met that burden, we take as true all evidence favorable to the plaintiff and indulge every reasonable inference and resolve any doubts in the plaintiff's favor. *Id.* at 228. If the evidence and allegations create a fact question regarding jurisdiction, then a court cannot grant a plea to the jurisdiction, and the factfinder must resolve the fact issue. *Id.* at 227-28. But if the relevant evidence is undisputed or fails to raise a fact question on the

jurisdictional issue, then a court rules on the plea to the jurisdiction as a matter of law. *Id.* at 228.

## B. Licensee or Invitee Status

### 1. *Nature of the claims*

We begin by clarifying the nature of appellees' claims, which we review de novo. *See Sampson*, 500 S.W.3d at 385. In their pleading, appellees assert entitlement to recover under both ordinary negligence and premises liability theories. As we have noted, however, in a suit against a governmental unit, as in litigation between private parties, negligence claims of the kind at issue will permit recovery either in premises liability (premises defect) or in ordinary negligence (negligent activity), but not both. *Harris Cnty. Flood Control Dist. v. Halstead*, No. 14-20-00457-CV, —S.W.3d—, 2022 WL 678277, at *3 (Tex. App.—Houston [14th Dist.] Mar. 8, 2022, no pet.) (citing *Sampson*, 500 S.W.3d at 385, 389). In evaluating whether a claimant has alleged a premises defect or a negligent activity claim against a governmental unit—and a concomitant waiver of immunity for that claim—the focus is on whether the injury occurred because of a condition of real property (premises defect), or whether the injury occurred as a contemporaneous result of the activity itself (negligent activity). *See Sampson*, 500 S.W.3d at 388; *Halstead*, 2022 WL 678277, at *4; *City of Houston v. Ayala*, 628 S.W.3d 615, 625-26 (Tex. App.—Houston [14th Dist.] 2021, no pet.). Although appellees assert both theories in the alternative, the nucleus of facts alleged leads inexorably to the conclusion that their claims sound in premises defect because they complain of an unreasonably dangerous condition of real property as opposed to injuries suffered as a contemporaneous result of some government activity. *See Sampson*, 500 S.W.3d at 388; *Ayala*, 628 S.W.3d at 625-26. Appellees have not contested this point. We conclude appellees' claims are premises liability claims as a matter of law. For this

reason, we agree with the part of the City's argument in which it contends that the trial court erred in denying its plea as to appellees' claims that purport to be based on a negligent activity theory.

2. *Duty in premises liability cases*

The legislature has waived the immunity of governmental units as to personal injury "so caused by a condition . . . of real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." *See* Tex. Civ. Prac. & Rem. Code §§ 101.021(1)(B), (2), 101.025. Generally, "if a claim arises from a premises defect, the governmental unit owes to the claimant only the duty that a private person owes to a licensee on private property, unless the claimant pays for the use of the premises." *Id.* § 101.022(a). Our court has construed this section's final phrase to mean that if the claimant pays for the use of the premises, then the governmental unit owes the same duty of care that a premises owner owes to an invitee. *Ayala*, 628 S.W.3d at 619. A premises owner must use reasonable care to correct or warn an invitee about dangerous conditions actually known to the owner, as well as dangerous conditions about which the owner reasonably should have known. *See id.* In contrast, the duty owed to a licensee requires that "a landowner not injure a licensee by willful, wanton or grossly negligent conduct, and that the owner use ordinary care either to warn a licensee of, or to make reasonably safe, a dangerous condition of which the owner is aware and the licensee is not." *Sampson*, 500 S.W.3d at 391; *see Ayala*, 628 S.W.3d at 619.

Distinguishing between invitees and licensees is a vital step under the TTCA for premises liability claims because the duty of care owed—and hence the governmental unit's waiver of immunity—depends on the answer. The City urges that appellees are licensees because they did not pay for use of the park, at least not

8

on the day of the accident. *See* Tex. Civ. Prac. & Rem. Code § 101.022(a). We turn to that question.

3.    *Allegations and evidence concerning payment*

Looking first to the pleadings, appellees alleged that E.L. and M.R. attended League baseball games at Moody Park on the day in question; that they were League "participants"; and that "Plaintiffs paid money directly or indirectly to the Defendant COH for use of the park premises and, therefore, were invitees of the COH."

The only proof relevant to payment and attached to the City's plea is one paragraph in the affidavit of David Hoang, an electrical superintendent employed by the City. Hoang attested that Moody Park is open to the public and does not charge an entrance fee or other fee for access, and that the park is not fenced and the public can access the area containing the electrical box at any time.

In their response to the City's plea, appellees expanded on their payment allegations. They asserted that on September 11, 2019, the League held softball practice for youth girls at Moody Park, and that appellees paid the League $65 "for the privilege of their girls playing" in the League. Appellees attached the declaration of E.L.'s mother (appellee Charles), who testified that she paid $65 per season to the League for E.L. to participate. For purposes of the plea, the City did not deny or challenge with evidence the assertion that the parents of both E.L. and M.R. paid the League for those girls to participate, so we accept that fact as true. *Buzbee*, 616 S.W.3d at 23.[4]

---

[4] In the trial court, the City conceded that Charles paid $65 to the League for E.L. to participate. In our court, however, the City notes that M.R., unlike E.L., presented no evidence that she paid the registration fee to the League. This is true, but M.R. was not obliged to present such evidence because the pleading alleged that a fee was paid for her to participate, and the City did not deny or contest that particular factual allegation with evidence attached to the plea. *See id.*

Appellees also asserted and presented evidence that the League paid a mandatory "rental" fee to the City to use the park's ballfields pursuant to a permit contract between the City and the League. On this point, appellees attached a copy of the permit contract and deposition excerpts of Mario Quintanilla, the League's president. Quintanilla testified that the League pays the City a fee to use the ballfields at Moody Park. In particular, Quintanilla explained that Moody Park is the only field where the League practices and plays, that there are only two ballfields at Moody Park, and that the League was authorized to use the ballfields on Mondays through Thursdays from 6:00 p.m. to 10:00 p.m., and on Saturdays from 10:00 a.m. to dark. The permit contract confirms that the League paid a fee to the City to rent or reserve use of the fields between September 4, 2019 and December 14, 2019.

In sum, according to appellees, they paid the League a registration fee for E.L. and M.R. to participate in the program; then the League paid the City a fee to rent or reserve the park fields on particular days and at particular times.

---

In its motion for rehearing, the City says that it challenged the plaintiffs' alleged jurisdictional fact that M.R. paid for use of the park because it filed a general denial. The City's argument misapprehends the movant's burden in challenging jurisdictional facts by a plea to the jurisdiction. The burden mirrors that of a summary judgment motion. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 637 (Tex. 2012) (citing *Miranda*, 133 S.W.3d at 228). If a plaintiff alleges facts sufficient to demonstrate the court's jurisdiction and the defendant wishes to challenge certain jurisdictional facts by a plea to the jurisdiction, the defendant must present evidence refuting the relevant fact. *See Buzbee*, 616 S.W.3d at 23 ("If the pleading is sufficient to demonstrate jurisdiction, and if the defendant does not challenge the plaintiff's factual allegations with supporting evidence, then our inquiry ends."). Only when the defendant meets this initial burden will the plaintiff be obliged to present evidence in response raising a fact question. *See Mission Consol. Indep. Sch. Dist.*, 372 S.W.3d at 637. The defendant cannot simply deny the existence of jurisdictional facts—such as by general denial—and force the plaintiff to demonstrate the existence of a fact issue with evidence. *See HS Tejas, Ltd. v. City of Houston*, 462 S.W.3d 552, 556 (Tex. App.—Houston [1st Dist.] 2015, no pet.); *HSBC Bank USA, N.A. v. Watson*, 377 S.W.3d 766, 773 (Tex. App.—Dallas 2012, pet. dism'd).

4. *Whether the payments were for use of the park*

The City argues that to constitute a payment for the use of the premises under section 101.022(a) the fee "must be paid specifically for entry onto and use of the premises," and that the payment appellees described does not qualify as such for two reasons. First, the City says "indirect" payments to rent or reserve the fields—i.e., through an intermediary such as a little league—are not sufficient to constitute a fee for use of public premises because the claimants paid the *League* to play softball but did not pay the *City* to use the park. Second, the City continues, assuming "indirect" payments generally suffice, the permit contract in question shows that appellees did not actually reserve the Moody Park ballfields for September 11, 2019.[5]

In support of its first argument, the City relies on this court's decision in *Ayala*, which cited *City of Dallas v. Davenport*, 418 S.W.3d 844 (Tex. App.—Dallas 2013, no pet.), and *City of Houston v. Crawford*, No. 01-18-00179-CV, 2018 WL 4868306 (Tex. App.—Houston [1st Dist.] Oct. 9, 2018, no pet.) (mem. op.). These cases involved slip-and-falls at airports. In *Ayala*, the claimant, Ayala, bought an airline ticket for a trip from Seattle to Jacksonville, with a connecting flight through Houston. *Ayala*, 628 S.W.3d at 621. While at Houston's Bush Intercontinental Airport, Ayala slipped and fell as she was disembarking from an escalator in one of the airport terminals. *Id.* at 618. We held that Ayala was a licensee, not an invitee, because her purchase of an airline ticket was not a payment made to the City for the entry onto and use of the airport premises; instead, her use of the airport was merely related to her purchase of the ticket. *Id.* at 621. We cited *Davenport* and *Crawford*

---

[5] In its brief, the City suggests a third reason why appellees did not pay to use the ballfields: because "their injuries did not occur on the ballfield, but in another area that was generally open and available to the public." Because the City did not present this contention in its plea to the jurisdiction, we need not address it. *See Miranda*, 133 S.W.3d at 228 (explaining that a plaintiff is required to raise a fact issue only "*after* the state asserts and supports with evidence that the trial court lacks subject matter jurisdiction" (emphasis added)).

11

for the proposition that the purchase of a plane ticket, which was "merely related" to the airport premises, did not confer status on the plaintiff as an invitee of the airport because the payment was not specifically for entry onto and use of the premises. *Id.* at 620 (citing *Davenport*, 418 S.W.3d at 848; *Crawford*, 2018 WL 4868306, at \*3). Our holding in *Ayala* is consistent with other Texas appellate court decisions involving comparable circumstances.[6]

In other factual situations, however, courts have held that certain fees are sufficient either to establish invitee status as a matter of law or at least create a fact question. One notable example involved the use of a city park for a wedding. *Sullivan v. City of Fort Worth*, No. 02-10-00223-CV, 2011 WL 1902018, at \*8 (Tex. App.—Fort Worth May 19, 2011, no pet.) (mem. op.). There, the court held that a rental fee paid to a city for a wedding reception dinner in a city park after closing hours was a fee for use of the park. *Id.* In a more recent case, the same court considered evidence of a similar type of "indirect" payment as we have here. *See City of Fort Worth v. Posey*, 593 S.W.3d 924, 927-28 (Tex. App.—Fort Worth 2020, no pet.). The *Posey* court held that a claimant injured on a public walkway raised a fact issue on her status as an invitee for TTCA purposes when her evidence of payment included proof that (1) she paid a fee to enter the Junior League's gift fair,

---

[6] *City of McAllen v. Quintanilla*, No. 13-18-00062-CV, 2019 WL 3023325, at \*3 (Tex. App.—Corpus Christi-Edinburg July 11, 2019, no pet.) (mem. op.) (claimant's purchase of bus ticket was insufficient to establish invitee status at bus station premises); *City of El Paso v. Viel*, 523 S.W.3d 876, 892 (Tex. App.—El Paso 2017, no pet.) (suggesting that, for TTCA purposes, courts should consider "whether the claimant would have been allowed entry onto premises *but for* a payment made to the governmental unit that owns the property"); *Clay v. City of Ft. Worth*, 90 S.W.3d 414, 417 (Tex. App.—Austin 2002, no pet.) (revenue-sharing agreement between city and telephone company was related to, but not a fee for use of, premises; thus, telephone company employee was not invitee when employee sustained injuries on premises); *Simpson v. Harris County*, 951 S.W.2d 251, 253 (Tex. App.—Houston [14th Dist.] 1997, no pet.) (payment of filing fee did not constitute payment for use of courthouse); *Garcia v. State*, 817 S.W.2d 741, 743 (Tex. App.—San Antonio 1991, writ denied) (claimant's payment of licensing fees and fuel taxes not considered payment for use of state's highway system).

and the Junior League in turn paid the city to rent the premises for its patrons' use, and (2) she paid the city a fee to park. *Id.* The court reasoned that, because the claimant presented evidence that both the direct and indirect payments she made "endowed her with the express right to use the walkway to travel between the parking lot and the gift fair,"[7] she raised a fact issue regarding her status as an invitee. *Id.* at 930-31. The Fourth Court of Appeals has also held that a claimant raised a fact question whether she was an invitee for TTCA purposes when she paid an entry fee to run a 5K race on city-owned property where she was injured. *City of San Antonio v. Realme*, No. 04-20-00119-CV, 2021 WL 1009330 (Tex. App.—San Antonio Mar. 17, 2021, pet. filed) (mem. op.).

Although the claimants' evidence in *Ayala* did not raise a fact issue on invitee status in that case, the circumstances in today's case are distinguishable. We conclude, like the court in *Posey*, that payments made indirectly to a municipality through an intermediary—such as a little league—can be sufficient evidence to raise a fact issue on invitee status under section 101.022(a), as long as the payment specifically allowed the claimants to use the premises. Contrary to the City's suggestion, nothing in *Ayala* or any other authority counsels against recognizing that "indirect" payments to a city can, despite their indirect nature, specifically permit use of city premises.

The next question is whether appellees presented some evidence that the payment to the City in fact allowed E.L. and M.R. to use to the ballfields to play

---

[7] The claimant in *Posey* presented the rental agreement between the city and the organization using the coliseum, which "contemplated that the premises' sidewalks and entryways would be used by Junior League and its patrons 'for ingress or egress to and from' the coliseum[.]" *Id.* at 928. Also, the claimant presented deposition testimony from the city's representative, in which he agreed that the rental agreement gave the organization's customers the right to use the city's property to enter and exit the coliseum and that part of what the organization paid for was the ability to access the event space along the walkway. *Id.*

13

softball. Appellees' evidence shows that the League's rental payment to the City was paid specifically to allow the League teams to use the ballfields. Moreover, participation in a baseball league necessarily involves playing on baseball fields; thus, paying a fee to participate in a baseball league encompasses use of the baseball fields. *See Posey*, 593 S.W.3d at 929; *Sullivan*, 2011 WL 1902018, at *8; *cf. City of Dallas v. Patrick*, 347 S.W.3d 452, 457 (Tex. App.—Dallas 2011, no pet.) (concluding that, under the TTCA, city would owe plaintiff the duty it owed an invitee when plaintiff obtained entry to city zoo through her mother's membership).

The City disputes that payment is shown here because according to the permit contract, the League had not reserved Moody Park for September 11, 2019. The City is correct that the permit contract does not list September 11 as a date on which the ballfields were "reserved" for the League. We conclude, however, that appellees raised a fact question on this point through two items of evidence. First, Charles said in her declaration that the park was "reserved" for the League practice on the day in question. Second, Quintanilla said in his deposition that the night of September 11, 2019 was a "scheduled practice," and that the League was "authorized" to use the Moody Park fields every day of the week except Fridays and Sundays. He did not make an exception for the week that included September 11. Thus, viewing the uncontested allegations together with the evidence in the light most favorably to appellees,[8] we conclude that a fact question exists whether E.L. and M.R. specifically paid for use of the premises on September 11, 2019, and thus would be considered invitees at the time of injury. *See Ayala*, 628 S.W.3d at 620-21; *Posey*, 593 S.W.3d at 930-31. The factfinder must resolve that dispute on

---

[8] *See Miranda*, 133 S.W.3d at 228.

remand.[9]  We hold that the trial court did not err in denying the City's jurisdictional plea as to appellees E.L. and M.R.

As to appellee Gilbert, however, we conclude that the record establishes conclusively that he is a licensee as a matter of law.  He is E.L.'s step-grandfather. There is no allegation or evidence that appellee Gilbert paid any fee to the League to participate or that he was otherwise entitled to invitee status.  On appeal, appellees do not explain why he, a non-participant in the League who has not paid a registration fee to the League, should be viewed as having paid for use of the park.[10] Because Gilbert is a licensee, we must address the City's alternative arguments that he has failed to establish a waiver of the City's immunity.

## C.    No Evidence Supporting the City's Liability to a Licensee

Because Gilbert was a licensee at the time of his injury, the City was required not to injure him "by willful, wanton or grossly negligent conduct," and to use ordinary care either to warn of, or to make reasonably safe, a dangerous condition of which the owner is aware and the licensee is not.  *See Sampson*, 500 S.W.3d at 391; *Ayala*, 628 S.W.3d at 619.  To defeat the City's jurisdictional plea, Gilbert was required to raise a fact issue regarding whether the City either had actual knowledge of the dangerous condition or that the City was grossly negligent.  *See Ayala*, 628

---

[9] The City did not argue in the trial court, and does not argue in our court, that appellees have failed to establish a waiver of immunity assuming that they are invitees.

[10] Neither the City nor appellees distinguish between the individual appellees; the City contends that all appellees are licensees, and appellees contend that they are all invitees.  However, in our de novo review of the trial court's denial of the City's plea to the jurisdiction, it is necessary for us to parse out the evidence related to each individual's status to determine whether the trial court properly exercised subject matter jurisdiction over all of appellees' claims. *Thomas v. Long*, 207 S.W.3d 334, 338-39 (Tex. 2006) ("[I]t is proper for a trial court to dismiss claims over which it does not have subject matter jurisdiction but retain claims in the same case over which it has jurisdiction.").

15

S.W.3d at 619 (citing *State Dep't of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 237 (Tex. 1992) (op. on reh'g)).

### 1. *No actual knowledge of the dangerous condition*

The City contended in its plea that it lacked actual knowledge of the electrified pass-through box. Actual knowledge requires subjective awareness that the danger existed at the time of the accident. *Sampson*, 500 S.W.3d at 392. Hypothetical or constructive knowledge is simply not enough. *See id.* "'[T]he fact that materials deteriorate over time and may become dangerous does not itself create a dangerous condition, and the actual knowledge required for liability is of the dangerous condition at the time of the accident, not merely of the possibility that a dangerous condition can develop over time.'" *Id.* at 395 (quoting *City of Dallas v. Thompson*, 210 S.W.3d 601, 602-03 (Tex. 2006)).

The City offered Hoang's affidavit on this point. According to Hoang, he reviewed the City's work order system for documents related to the pass-through box at Moody Park for five years preceding the September 11, 2019 incident and found no work orders for this particular pass-through box. He also stated that he reviewed the database and the City's 311 records for reports that a box cover lid in Moody Park had become electrified and found no such reports. According to Hoang, the City had no actual knowledge that the pass-through box lid had become energized before learning of appellees' injuries on September 11, 2019. This evidence sufficiently shows that the City had no actual knowledge of the hazardous condition. *See Ayala*, 628 S.W.3d at 623; *City of Dallas v. Kennedy*, No. 05-19-01299-CV, 2020 WL 3286515, at *3 (Tex. App.—Dallas June 18, 2020, no pet.) (mem. op.).

None of the evidence submitted by appellees raises a fact question on actual knowledge. Appellees refer to a 2011 certificate of compliance accepting as

complete the field lights remodel at Moody Park. But this document makes no mention of any hazardous conditions at the park and simply notes, that *as of September 16, 2011*, the "building listed hereon has been duly inspected and found to comply" with the City's construction code requirements and ordinances.

Appellees also presented the deposition of Anthony LaFaso, another electrical superintendent in the City's Parks and Recreation Department in 2019. According to the City, LaFaso's testimony supports the City's argument that it lacked actual knowledge that the relevant pass-through box at Moody Park had become energized before the date of appellees' injuries. Appellees do not cite to this deposition in their brief, but in their response to the City's plea, they cited it to support their claim that the City was "placed on notice of electrical issues at Moody Park that specifically required the City to open the iron covers to make repairs." But LaFaso testified that he did not recall any City work orders relating to the electrical box or electrical components at issue in this case. According to LaFaso, the City was aware that there were underground electrical boxes with metal lids "that were not grounded," but he did not testify that the City was aware that any of these electrical boxes had ever became energized. At most, this evidence shows that the City may have been aware of the possibility of a dangerous condition, which at most shows constructive, rather than actual, knowledge. *See Sampson*, 500 S.W.3d at 395; *Thompson*, 210 S.W.3d at 603.

Finally, appellees cite to copies of work orders, which—in conflict with Hoang's assertion that there were none—purport to show work requested and performed at Moody Park from April 2016 to November 2017. According to appellees, these work orders show that the City "was placed on notice of electrical issues at Moody Park that specifically required the [City] to open the iron covers to make repairs" at least three times. We disagree. The reports contain minimal

information, but they show the nature of the work requested to be "broken ground box cover," "install ground box in playground area," "assist electricians w/open ground boxes," and "open ground boxes for electrician to search for bad wire." There is no indication that the City was put on notice that the electrical box cover had become energized or that the box presented an electrical hazard to any patrons. Appellees' evidence thus provides no information concerning "reports of prior injuries or reports of the potential danger presented by the condition." *Sampson*, 500 S.W.3d at 397.

We conclude appellees have not raised a fact issue that the City had actual knowledge, prior to September 11, 2019, that the cover of this pass-through box at Moody Park had become energized.

### 2. *No evidence of gross negligence*

The City also challenged the issue of gross negligence in its plea:

Gross negligence involves proof of two elements: (1) viewed objectively from the actor's standpoint, the act or omission must involve an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and (2) the actor must have actual, subjective awareness of the risk involved, but nevertheless proceed in conscious indifference to the rights, safety, or welfare of others. *See Mobil Oil Corp. v. Ellender*, 968 S.W.2d 917, 921 (Tex. 1998) (citing *Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 23 (Tex. 1994)). In reference to the first requirement, the "extreme risk" means the likelihood of serious injury to the plaintiff. *Id.* In reference to the second requirement, ordinary negligence rises to the level of gross negligence when it can be shown that the defendant was aware of the danger but his acts or omissions demonstrated that he did not care to address it. *Louisiana-Pacific Corp. v. Andrade*, 19 S.W.3d 245, 246-47 (Tex. 1999); *Burk Royalty Co. v. Walls*, 616 S.W.2d 911, 922 (Tex. 1981).

The City was not aware that the box lid had, against all probability, become energized. Exhibit A [Hoang affidavit]. Had it known, the box

18

would have been immediately repaired. *Id.* The City was not working with the box at or near the time of the incident – the City in fact has no records of working on the box in the years leading up to the incident. *Id.* There is no evidence of a person ever being electrocuted by any one of the hundreds of electrical box lids at City parks at any time prior to the incident. *See id.* Accordingly, no reasonable person could conclude that the City had "actual, subjective awareness" that the box would become energized but chose to do nothing about it. Plaintiffs' gross negligence claim therefore fails as a matter of law.

Appellees did not respond to the City's arguments regarding gross negligence. Therefore, they did not raise a material fact question on this issue.

\* \* \*

Because the City conclusively established that Gilbert was a licensee and appellees did not raise a fact question on either actual knowledge or gross negligence, the trial court erred in denying the City's plea to the jurisdiction as to Gilbert's claims.

## D. Bystander Claims

Appellees Coleman and T.R. allege bystander liability against the City on the basis that they are close family members of M.R. and observed the physical injuries to M.R. contemporaneously as they occurred in close proximity. The City contends that, because there is no basis to assert jurisdiction over any of appellees' claims,[11] these bystander claims must likewise fail. This is so, the City continues, because "[b]efore a bystander may recover, he or she must establish that the defendant has negligently inflicted serious or fatal injuries on the primary victim." *Edinburg Hosp. Auth. v. Trevino*, 941 S.W.2d 76, 79 (Tex. 1997); *see also Am. Indus. Life Ins. Co.*

---

[11] The TTCA does not create a cause of action; it waives sovereign immunity as a bar to a suit that would otherwise exist. *Sampson*, 500 S.W.3d at 387 (citing *City of Tyler v. Likes*, 962 S.W.2d 489, 494 (Tex. 1997)).

19

*v. Ruvalcaba*, 64 S.W.3d 126, 144 (Tex. App.—Houston [14th Dist.] 2001, pet. denied) (bystander may not recover until defendant's liability to primary victim is established).

But as discussed above, a fact issue remains regarding the trial court's jurisdiction over M.R.'s premises defect claims. The City has not asserted any other basis for a lack of subject matter jurisdiction over these bystander claims. Accordingly, the trial court did not err in denying the City's jurisdictional plea as to Coleman's and T.R.'s bystander claims.

## Conclusion

We have concluded that appellees' claims are premises defect claims, and the trial court erred in denying the City's jurisdictional plea to the extent it failed to dismiss appellees' claims purportedly based on a negligent activity theory. Further, the City conclusively established that Gilbert is a licensee, and appellees failed to raise a fact issue that the City either had actual knowledge of the dangerous condition or was grossly negligent. Thus, the trial court erred in denying the City's jurisdictional plea as to Gilbert's premises defect claim. Accordingly, we reverse and render judgment dismissing (1) appellees' negligent activity claims and (2) Gilbert's claims.

However, a fact question exists regarding E.L.'s and M.R.'s status as invitees, and the trial court did not err in denying the City's plea as to their premises defect claims. The trial court also did not err in denying the City's jurisdictional plea as to Coleman's and T.R.'s bystander liability claims. Accordingly, we affirm in part the

trial court's order denying the plea to the jurisdiction as to these claims. We remand to the trial court for further proceedings.


/s/     Kevin Jewell
            Justice

Panel consists of Chief Justice Christopher and Justices Wise and Jewell.